KIDDER, PEABODY & COMPANY, IN-CORPORATED, Plaintiff–Appellee,

v.

MAXUS ENERGY CORPORATION and Maxus Corporate Company, Defendants–Appellants,

Martin A. Siegel, Ivan F. Boesky and John Does 1–10, Defendants.

Nos. 324, 524, Dockets 90–7487, 90–7657.

United States Court of Appeals, Second Circuit.

Argued Oct. 1, 1990.

Decided Feb. 6, 1991.

Chester J. Hinshaw, Dallas, Tex. (Frederick E. Sherman, New York City, Jones, Day, Reavis & Pogue, Dallas, Tex., and New York City, of counsel), for defendants-appellants Maxus Energy Corp. and Maxus Corporate Co.

Gary P. Naftalis, New York City (Ellen R. Nadler, Mark J. Headley, Kramer, Levin, Nessen, Kamin & Frankel, New York City, of counsel), for plaintiff-appellee Kidder, Peabody & Co., Inc.

Charles E. Davidow, New York City, for defendant-appellee Ivan F. Boesky.

Before CARDAMONE and MINER, Circuit Judges, and MUKASEY, District Judge.[*]

MINER, Circuit Judge:

Defendants-appellants, Maxus Energy Corporation ("Maxus Energy") and Maxus Corporate Company ("Maxus Corporate"), appeal from a judgment entered in the United States District Court for the Southern District of New York (Pollack, *J.*), declaring that Maxus Energy and Maxus Corporate may not assert claims under sections 10(b) and 14(e) of the Securities Ex-

change Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78j(b), 78n(e) (1988), and that the exchange ratios of a stock for stock distribution between the two merging corporations are not subject to retroactive adjustment and, in any event, may not be challenged by Maxus Energy or Maxus Corporate because they suffered no cognizable injury. Appellants also appeal from an order enjoining them from asserting claims in a pending Texas court proceeding commenced on the same day that the declaratory judgment action was instituted. Appellants contend that the federal claims were mooted by their numerous representations to the court that they would not assert claims under the 1934 Act and that the pendent state law claims should have been dismissed after the 1934 Act claims were mooted. Finally, appellants assert that it was improper for the court to enjoin the state court proceedings. We hold that the judgment declaring that Maxus Energy and Maxus Corporate may not assert claims under the 1934 Act was proper but that the district court erred in exercising pendent jurisdiction over state law claims after declining to do so. We also hold that the injunction exceeded the scope of the declaratory judgment.

## BACKGROUND

Early in 1983, Diamond Shamrock Corporation ("Diamond Shamrock") retained Kidder, Peabody & Company, Inc. ("Kidder") to provide financial advice regarding a possible acquisition of Natomas Company ("Natomas"). Martin A. Siegel, a vice president and director of Kidder, headed Kidder's team of investment advisers. Acting on Kidder's advice, in May of 1983 Diamond Shamrock began a hostile tender offer for 51% of Natomas' outstanding common stock at $23.00 per share. At that time, the market price of Natomas stock was $18.88 per share.

Friendly merger negotiations ensued, and Diamond Shamrock and Natomas agreed to a stock for stock merger, whereby both companies became wholly owned

[*] Of the United States District Court for the South-

ern District of New York, sitting by designation.

subsidiaries of a newly created parent, Maxus Energy.[1] The $18.88 price per share served as the basis for the week-long friendly merger negotiations. On August 31, 1983, at the completion of the transaction, Diamond Shamrock's former shareholders owned 54% of Maxus Energy stock and Natomas' former shareholders owned the remaining 46%. The Natomas shareholders received 1.05 shares of Maxus Energy stock for each Natomas share and the "old" Diamond Shamrock shareholders received 1.00 shares of Maxus Energy stock for each "old" Diamond Shamrock Corporation share.

On February 13, 1987, the Securities and Exchange Commission ("SEC") filed a complaint against Siegel, alleging that, while advising Diamond Shamrock to acquire Natomas, he had illegally disclosed material non-public information about the proposed Natomas acquisition to Ivan F. Boesky. The complaint noted that, in February of 1983, Boesky had purchased Natomas stock on the basis of that information, earning about $4.8 million upon the sale of the stock after the merger. When Maxus Energy learned of these activities, it contacted Kidder to enter into settlement discussions pertaining to potential legal claims arising from the wrongdoing of Siegel and Boesky. The parties also entered into a "standstill" agreement; according to its terms, either party had to notify the other ten days prior to commencement of a lawsuit relating to the matters in dispute. After settlement discussions proved fruitless, Maxus Energy notified Kidder on November 13, 1987 that it intended to commence a lawsuit after the expiration of the ten day period.

At 7:03 a.m. on November 23, 1987, Maxus Corporate, claiming to be successor in interest to both Diamond Shamrock and Maxus Energy, brought a suit in Texas state court against Kidder, Siegel and Boesky, alleging state law claims of breach of contract and negligence against Kidder, and breach of fiduciary duty, fraud, conver-

sion and violations of section 27.01 of the Texas Business and Commerce Code against all defendants. Maxus Corporate sought actual and consequential damages for (1) the more than $4 million in fees and expenses paid to Kidder under financial adviser and dealer manager agreements; (2) the more than $56 million in out-of-pocket costs incurred in the Natomas acquisition; (3) the losses it incurred in having been fraudulently induced to acquire Natomas; (4) the inflated amount it was required to pay to acquire Natomas because of the illegal conduct of Kidder, Siegel and Boesky; and (5) punitive damages.

At approximately 9:00 a.m. that same day, Kidder initiated a declaratory judgment action in the Southern District of New York against Maxus Energy, Siegel and Boesky. It sought a declaration that it was not liable to Maxus Energy under sections 10(b) and 14(e) of the 1934 Act and a declaration of non-liability for state law claims of breach of contract, breach of fiduciary duty, negligence and fraud. Kidder also sought a declaration that if it were found liable to Maxus Energy, it was entitled to indemnification or contribution from Siegel and Boesky. Jurisdiction was asserted under section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (1988) and 28 U.S.C. § 1331 (1988). No diversity jurisdiction was alleged because both Kidder and Maxus Energy are Delaware Corporations.

Also on that day, Kidder filed, in the Delaware Court of Chancery, a second declaratory judgment action against Maxus Energy seeking a declaration under the holding in *Bangor Punta Operations, Inc. v. Bangor & Aroostock R.R.*, 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) (shareholder who bargains for and purchases substantially all the shares of a corporation lacks equitable standing to assert claim for damages resulting from prior corporate misconduct) that Maxus Energy lacked standing to sue for damages for the inflat-

---

1. Prior to May 1987, Maxus Energy was known as Diamond Shamrock Corporation. The merger occurred between "old" Diamond Shamrock Corporation and Natomas and, at the comple- tion of the merger, both became wholly-owned subsidiaries of "new" Diamond Shamrock Corporation, which was subsequently renamed Maxus Energy Corporation.

ed exchange ratio. The Delaware court ultimately dismissed the action without prejudice because of the pending declaratory judgment action before Judge Pollack and the pending Texas action.

On February 10, 1988, Maxus Energy moved to dismiss the declaratory judgment action before Judge Pollack on the grounds of lack of subject matter jurisdiction, improper service of process, and inappropriate use of the federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1988). During the proceedings on its motion to dismiss, Maxus Energy represented on several occasions to the court that neither it nor Maxus Corporate ever would assert any claims under sections 10(b) or 14(e) of the Act against Kidder regarding the Natomas transaction. Notwithstanding these representations, Judge Pollack denied Maxus Energy's motion to dismiss, without prejudice to renewal of the motion at the completion of pre-trial proceedings.

Soon after, Boesky moved for judgment on the pleadings, asserting that Maxus Energy was not injured by his purchases of Natomas stock and that, in any event, Maxus Energy was barred from recovering under the *Bangor Punta* holding. On December 15, 1989, Maxus Energy renewed its motion to dismiss, once again renouncing any intent to pursue federal securities claims against Kidder on behalf of itself or its wholly-owned subsidiary, Maxus Corporate. On January 26, 1990, Kidder moved for summary judgment declaring that neither Maxus Energy nor Maxus Corporate could state claims for relief against Kidder arising from the merger. Shortly thereafter, Kidder amended its complaint to add Maxus Corporate as a defendant.

In response to Kidder's amended complaint, Maxus Energy moved to dismiss Kidder's section 10(b) and section 14(e) claims as moot on the basis of the numerous representations it had made to the court renouncing any intent to assert these claims. Maxus Corporate moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction and on the ground that the claims were barred by, *inter alia,*

the federal Anti–Injunction Act, 28 U.S.C. § 2283 (1988).

On March 26, 1990, Judge Pollack issued an order, which was followed on April 13, 1990 by the entry of a judgment, denying the motions of Maxus Energy and Maxus Corporate to dismiss and declaring that Kidder was not liable to either Maxus Energy or Maxus Corporate under sections 10(b) and 14(e) of the 1934 Act. Judge Pollack found that the court had jurisdiction over Maxus Corporate because it was the "alter ego" of Maxus Energy and had waived service of process by participating in the case. In the fifth paragraph of the judgment, Judge Pollack stated that "[t]he exchange ratios of the negotiated, stock for stock, distribution of the equity stock of the new holding company to the stockholders of Natomas ... and (Old) Diamond Shamrock ... are not subject to retroactive adjustment on claims by Diamond Shamrock ...," and Maxus Energy and Maxus Corporate "suffered no cognizable injury" as a result of these transactions. In the seventh paragraph, Judge Pollack concluded that "[t]he balance of [Kidder's] claims to declaratory relief, essentially based on its fee controversy with Diamond Shamrock, are pendent state claims over which this Court declines to exercise jurisdiction." Kidder's claims for contribution and indemnification against Boesky and Siegel were dismissed. Maxus Energy and Maxus Corporate appeal from the judgment entered against them by filing notices of appeal on May 17, 1990 and May 29, 1990, respectively.

About two weeks after the entry of the declaratory judgment, Kidder moved for summary judgment in the Texas state court on the ground that Maxus Corporate's state law claims were barred by the doctrine of res judicata. This motion focused on the fifth paragraph of the declaratory judgment. The Texas court denied the motion on June 20, 1990. Several days later, Kidder approached Judge Pollack, requesting permission to file a motion to enforce the declaratory judgment. Judge Pollack signed an order to show cause and scheduled a hearing to determine whether the Texas court proceedings should be en-

joined. Finally, on July 23, 1990, Judge Pollack signed an order enjoining Maxus Energy and Maxus Corporate from pursuing in the Texas state court any claim, however denominated, "arising from the merger exchange formula, as well as what led up to it, in the stock-for-stock merger."

## DISCUSSION

### Disqualification

■ Maxus Energy and Maxus Corporate[2] moved in this court on August 28, 1990 to vacate the declaratory judgment and the injunction order on the ground that Judge Pollack and his wife owned shares of General Electric ("GE") stock, which holds 80% of the outstanding stock of Kidder through one of its wholly owned subsidiaries. Appellants contend that Judge Pollack therefore was disqualified from presiding over the case under 28 U.S.C. § 455 (1988) before entering any of the rulings. On August 18, 1990, Judge Pollack informed this court that, immediately upon learning of the relationship between GE and Kidder, he and his wife had sold their shares on August 9, 1990.

■ Maxus argues that Judge Pollack knew of the relationship between GE and Kidder because in two affidavits and at one hearing references were made to GE's indirect ownership of Kidder. Pointing to 28 U.S.C. § 455(b)(4), which requires disqualification where the judge knows of his financial interest in a party, Maxus contends that vacatur is mandated. During the course of the proceedings in this case, Judge Pollack received thousands of pages of written submissions and held seven hearings in connection with the various motions of the parties. We think it unlikely that Judge Pollack knew of his interest simply because one or two passing references were made about GE. His complete divestiture and disclosure upon learning of the interest belie the contention that he knew of the interest but continued to preside over the litigation nonetheless.

28 U.S.C. § 455(f) provides in relevant part that:

> Notwithstanding the preceding provisions of this section, if any ... judge, ... to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him ..., that he ... has a financial interest in a party..., disqualification is not required if the ... judge ... divests himself ... of the interest that provides the grounds for the disqualification.

We think that section 455(f) directly applies to this situation. Nearly three years of the litigants' time and resources and substantial judicial efforts have been devoted to the litigation. Judge Pollack's forthright divestiture of his stock eliminated the need for disqualification, since the requirements of section 455(f) were fulfilled. The entire problem would have been avoided had the parties filed their corporate disclosure statements with the district court at the commencement of the action as required by rule 9 of the Rules of the United States District Court for the Southern District of New York. We fail to understand why the parties neglected to follow the district court rules, and give fair warning that such neglect will not be countenanced in the future.

### Declaratory Judgment

Maxus Corporate contends that the district court lacked in personam jurisdiction over it and lacked subject matter jurisdiction over any of the claims that Kidder asserted against it in its amended complaint. Judge Pollack found that Maxus Corporate treated itself, and had been treated, as the "alter ego" of Maxus Energy throughout the litigation. Because Maxus Corporate, as Maxus Energy's alter ego, sufficiently participated in the proceedings, he held that it waived any objection to a lack of personal service of process.

**2.** Maxus Corporate and Maxus Energy hereafter will be referred to as "Maxus." A distinction between Maxus Corporate and Maxus Energy will be made only where necessary.

■ Jurisdiction is predicated on section 27 of the 1934 Act, which provides for nationwide service of process. 15 U.S.C. § 78aa (1988); *see Mariash v. Morrill*, 496 F.2d 1138, 1142 (2d Cir.1974); *Steinberg & Lyman v. Takacs*, 690 F.Supp. 263, 265–66 (S.D.N.Y.1988). Section 27 confers personal jurisdiction over a defendant who is served anywhere within the United States. *Takacs*, 690 F.Supp. at 265. We agree with the district court that Maxus Corporate waived service of process. *See* 4 C. Wright & A. Miller, Federal Practice & Procedure § 1063, at 226 (2d ed. 1987). Throughout the proceedings, Maxus Energy acted on behalf of itself and Maxus Corporate. In fact, Maxus Energy even submitted papers to the court in the name of itself and Maxus Corporate. As the district court correctly found, the evidence reveals that Maxus Corporate, as the alter-ego of Maxus Energy, participated fully in the proceedings and therefore waived any objections to lack of service of process. Maxus Corporate also contends that the district court lacked subject matter jurisdiction over the claims asserted against it because, at the time Kidder amended its complaint, no live controversy existed. As we discuss below, a live controversy existed at all times, including the time when Kidder amended its complaint to include Maxus Corporate as a defendant, and therefore, Maxus Corporate's contention is without merit.

■ Kidder sought a declaration that it is not liable to Maxus for violations of sections 10(b) and 14(e) of the 1934 Act. Apparently, after learning of the SEC investigation into the activities of Siegel relating to the Diamond Shamrock/Natomas merger, Maxus contacted Kidder to enter into settlement discussions about potential claims arising out of this transaction. Maxus representatives sent a memorandum to Kidder detailing the claims it might assert; one claim was based on the federal securities laws. A declaratory judgment action under 28 U.S.C. § 2201 (1988) therefore was properly commenced in light of the real threat of litigation.

■ "[T]he question in each case [in which a declaratory judgment is sought] is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959–60, 22 L.Ed.2d 113 (1969) (citation omitted); *Christopher P. v. Marcus*, 915 F.2d 794, 802 (2d Cir.1990); *Beacon Constr. Co. v. Matco Elec. Co.*, 521 F.2d 392, 397 (2d Cir.1975); *Salomon Bros. v. Carey*, 556 F.Supp. 499, 501 (S.D.N.Y. 1983). Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis. *Salomon Bros.*, 556 F.Supp. at 501 (citing *Muller v. Olin Mathieson Chem. Corp.*, 404 F.2d 501, 504 (2d Cir.1968)); 10A C. Wright & A. Miller, Federal Practice & Procedure § 2757, at 580 (2d ed. 1983). In reviewing the trial court's exercise of discretion to grant or refuse declaratory relief, we may reverse where we find that the exercise was erroneous. *See Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1000 (2d Cir. 1969), *cert. denied*, 397 U.S. 1064, 90 S.Ct. 1502, 25 L.Ed.2d 686 (1970).

"[A] declaratory judgment action should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir.1986) (citations omitted). "'It follows as a general corollary to this rule that if either of these objectives can be achieved the action should be entertained....'" *Salomon Bros.*, 556 F.Supp. at 502 (quoting *Broadview Chem. Corp.*, 417 F.2d at 1001).

■ Maxus contends, however, that Kidder's claims under sections 10(b) and 14(e) of the 1934 Act died and the parties lost a legally cognizable interest in their resolution when Maxus Energy for itself and Maxus Corporate committed never to

assert these claims against Kidder. A controversy ceases to be "real and immediate" when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). Where the defendant voluntarily ceases the conduct at issue, however, the declaratory action is not necessarily mooted. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Here, Maxus asserted that it would not bring an action grounded in the federal securities laws against Kidder. This is not a case where the parties have entered into a settlement, *Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280, 283 (2d Cir.1985); *International Union v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir.1983), or where the defendant has "entered into a binding, judicially enforceable agreement," *Stokes v. Village of Wurtsboro*, 818 F.2d 4, 5 (2d Cir.1987). In those situations, the claims inarguably were moot. By contrast, Maxus attempts to unilaterally bar Kidder's claims for declaratory relief simply by representing that it will not bring an action under the federal securities laws.

Without a declaratory judgment, Maxus again could put Kidder to the task of defending against the federal securities claims. *See Brooks v. Flagg Bros., Inc.*, 63 F.R.D. 409, 413 (S.D.N.Y.1974) (finding that, though defendant promised not to sell plaintiff's furniture, threat that furniture might be sold in the future made plaintiff's claim a case or controversy for purposes of declaratory relief). A judicial declaration that Maxus is barred from asserting the 1934 Act claims would both settle the matter between these parties once and for all and dispel all uncertainty regarding the liability of Kidder for these claims. Under these circumstances, Maxus cannot complain that the district court declared the rights of the parties in accordance with the very representations it made.

■ Maxus next contends that the district court abused its discretion by determining an issue that impacts directly on the claims pending in the Texas state court proceedings. The parties appear to be somewhat uncertain as to whether and to what extent the declaratory judgment declared the rights of Kidder and Maxus relating to state law claims. In paragraph five of the declaratory judgment, the court held that the merger exchange ratio could not be the subject of retroactive adjustment and that Maxus had suffered no "cognizable injury" in any event. In paragraph seven it declined to exercise jurisdiction over "the balance of" Kidder's claims for declaratory relief, which it characterized as "pendent state claims" that were "essentially based on its fee controversy with Diamond Shamrock." We think that paragraph five of the judgment disposes of issues pertaining to state law claims, notwithstanding the subsequent declaration of the court in the seventh paragraph. The state law issues it disposes of are those referrable to damages, the district court having held that Maxus suffered no injury as a result of the exchange of stock. However, we find that once the 1934 Act claims were resolved in Kidder's favor, it was unnecessary to declare that Maxus Corporate could not seek damages on any claim that it might assert in the Texas action under Texas law.

■ A federal court may exercise pendent jurisdiction over state-law claims "whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). The decision whether to exercise pendent jurisdiction is within the discretion of the district court. *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 732 F.2d 38, 42 (2d Cir.1984). In exercising that discretion, a district court is required to "consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction." *Carnegie–Mellon*, 484 U.S. at 350,

108 S.Ct. at 618; *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990).

Kidder contends that the amount of time expended and the fact that Judge Pollack is presiding over consolidated multi-district actions brought by individual shareholders relating to the same transaction point to the exercise of pendent jurisdiction. We think, however, that the balance of factors weighed in favor of divestiture of the pendent state law declaratory claims. The judicial economy factor should not be the controlling factor, and it may be appropriate for a court to relinquish jurisdiction over pendent claims even where the court has invested considerable time in their resolution. *Powell v. Gardner,* 891 F.2d 1039, 1047 (2d Cir.1989) (even after a trial on the merits of section 1983 claim, the district court properly dismissed pendent state law claims after directing a verdict in favor of defendant on section 1983 claim). *Cf. Dunton v. County of Suffolk,* 729 F.2d 903, 910 (2d Cir.1984) ("Even if the federal claims are discovered to be patently meritless only after the trial begins, once that discovery is made the state claims must be dismissed along with the federal ones.").

The strong interests of federalism and comity in this case pointed toward divestiture of pendent jurisdiction. The record reveals that the Texas court proceedings were moving along and were almost at the discovery stage. Several pre-trial motions had been made and disposed of by that court. Moreover, the issue of damages arising from the transaction, which the district court found to be governed by the *Bangor Punta* rule barring award of damages for prior corporate misconduct to purchaser of corporate shares, was directly before the Texas court. In its original petition, Maxus Corporate asked for damages in the amount of $300 million arising from the inflated market price of Natomas stock as a direct consequence of the insider trading of a Kidder employee. Whether or not *Bangor Punta* applies to the Diamond Shamrock/Natomas merger was a question that the Texas court could capably and competently decide. A district court should refrain from "reach[ing] out for ... issues, thereby depriving state courts of

opportunities to develop and apply state law...." *Mayer v. Oil Field Sys.,* 803 F.2d 749, 757 (2d Cir.1986). Since Maxus Corporate sought to have the damages issues determined in the Texas court on its claims for breach of contract, breach of fiduciary duty, negligence, fraud and conversion and for violations of the Texas Business and Commerce Code in the Texas complaint, its choice of forum should have been honored.

Finally, the state law issue of damages arising from the transaction was not so inextricably intertwined with " 'federal policy that the argument for exercise of pendent jurisdiction is particularly strong.' " *Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970) (footnote omitted) (quoting *United Mine Workers,* 383 U.S. at 727, 86 S.Ct. at 1139–40)); *see Baylis v. Marriott Corp.,* 843 F.2d 658, 665 (2d Cir.1988) ("One factor that may sometimes favor retaining pendent jurisdiction is when a state claim is closely tied to questions of federal policy and where the federal doctrine of preemption may be implicated.")

Although it was proper for the court under the circumstances to settle the federal securities claims once and for all, it was error to dispose of the state law issues relating to Maxus Corporate's damages arising from the alleged tipping by Siegel, the subsequent elevation of the price in Natomas stock, and the inflated exchange ratio occasioned by the allegedly unlawful activities. *Carnegie–Mellon,* 484 U.S. at 350, 108 S.Ct. at 618–19.

*Injunction Order*

■ Maxus contends that once it filed its notice of appeal to this court, the district court was divested of jurisdiction to issue an injunction. As a general rule, once a notice of appeal has been filed, "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam). We have noted an exception to

that general rule in *International Ass'n of Machinists & Aerospace Workers v. Eastern Air Lines,* 847 F.2d 1014 (2d Cir.1988). There, the court held that under Fed.R. Civ.P. 62(c), a district court may grant injunctive relief after a proper notice of appeal has been filed, but only when it is necessary to preserve the status quo pending the appeal. *Id.* at 1018.

Here, Judge Pollack issued the injunction because he was advised that Maxus Corporate continued to litigate the issue of damage in the claims it asserted in the Texas court proceedings, despite the provisions of the declaratory judgment. The injunction expressly provided that it was issued to preserve the status quo as a result of Maxus Corporate's litigation posture in Texas. We find that Judge Pollack had the jurisdiction to issue an injunction to preserve the status quo. *See New York State Nat'l Org. of Women v. Terry,* 886 F.2d 1339, 1350 (2d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Leonhard v. United States,* 633 F.2d 599, 609–10 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981).

Maxus advances several arguments regarding the impropriety of issuing an injunction in this case. It argues that the injunction was prohibited under the Anti–Injunction Act, 28 U.S.C. § 2283, because it exceeds the scope of the declaratory judgment, and under the Full, Faith and Credit Act, 28 U.S.C. § 1738, because the Texas court rejected Kidder's contention that the declaratory judgment precluded the litigation of the state law claims. It also argues that the injunction is unenforceable because it fails to inform the parties of the conduct that is forbidden.

The portion of the injunction order that prohibits Maxus from asserting federal securities law claims is not barred by the Anti–Injunction Act. That Act generally prohibits federal courts from enjoining pending state court proceedings. *Standard Microsystems Corp. v. Texas Instruments, Inc.,* 916 F.2d 58, 61 (2d Cir.1990). The Act sets out three exceptions to that general rule, and the third, commonly-known as the "relitigation exception," is directly applicable here. *Murray v. National Broadcasting Co.,* 718 F.Supp. 249, 250 (S.D.N.Y.1989). The relitigation exception "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 147, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988). Well-established principles of res judicata and collateral estoppel provide the foundation for the exception. *Murray,* 718 F.Supp. at 250. Thus, the district court properly enjoined Maxus from relitigating the federal securities claims, "no matter how denominated," because those issues already had been decided. *See Staffer v. Bouchard Transp. Co.,* 878 F.2d 638, 643 (2d Cir.1989).

We have determined that Judge Pollack erred in declaring that Maxus suffered no damages as a result of the exchange of stock. We therefore decide that the injunction exceeds the bounds of a proper declaratory judgment to the extent that it precludes litigation of the claims for damages under Texas law. Accordingly, we need not determine whether the injunction violated the Full, Faith and Credit Act, *see Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986), or whether the injunction is specific enough to inform the parties of the prohibited conduct.

## CONCLUSION

We affirm in part and reverse in part and remand to the district court for modification of the judgment and injunction order in a manner consistent with the foregoing.