**In re IVAN F. BOESKY SECURITIES LITIGATION.**

**KIDDER, PEABODY & COMPANY, INCORPORATED, Plaintiff–Appellee,**

v.

**MAXUS ENERGY CORPORATION; Maxus Corporate Company, Defendants–Appellants,**

**Ivan F. Boesky; John Does 1–10, Defendants,**

**Ivan F. Boesky, Defendant–Appellee.**

No. 517, Docket 91–7677.

United States Court of Appeals, Second Circuit.

Argued Dec. 6, 1991.

Decided Feb. 25, 1992.

Gary F. Naftalis, New York City (Ellen P. Nadler, Kramer, Levin, Nessen, Kamin & Frankel, of counsel), for plaintiff-appellee.

Chester J. Hinshaw, Dallas, Tex. (Frederick E. Sherman, Jones, Day, Reavis & Pogue, New York City, of counsel), for defendants-appellants Maxus Energy Corp. and Maxus Corporate Co.

Charles E. Davidow, Washington, D.C. (Wilmer, Cutler & Pickering, of counsel), for defendant–appellee Ivan F. Boesky.

Before MINER and ALTIMARI, Circuit Judges.*

MINER, Circuit Judge:

Defendants-appellants Maxus Energy Corporation ("Maxus Energy") and Maxus Corporate Company ("Maxus Corporate"), each a Delaware corporation, appeal from a modified declaratory judgment and injunction order entered in the United States District Court for the Southern District of New York (Pollack, *J.*). The modified judgment and injunction were entered by the district court after our decision in *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2829, 115 L.Ed.2d 998 (1991), in which we remanded the case after partially affirming and partially reversing the district court's original declaratory judgment and injunction order. The declaratory judgments and injunctions entered in this case all involved claims arising out of merger transactions to which the predecessors of appellants were parties. The modified judgment declared, among other

---

* Judge Kaufman, originally a member of the panel, died on February 1, 1992. The appeal is being decided by the remaining members of the panel pursuant to Local Rule § 0.14(b).

things, that (i) the exchange ratios relating to the distribution of stock in the merger of a new holding company, Maxus Energy's predecessor, were "not subject to retroactive adjustment," and (ii) appellants "suffered no cognizable injury" in connection with the merger transactions. The modified injunction order enjoined relitigation by appellants of any federal claims, and any claims "embraced by" federal claims, arising from the merger transactions.

Appellants contend that the district court's modified declaratory judgment and injunction order "squarely violate" and "circumvent" the mandate of our *Kidder* decision. We do not endorse these specific descriptions of the actions taken on remand by the learned district judge. However, we are concerned, for the reasons that follow, that the terms of the modified judgment and injunction reasonably could be interpreted in a manner that might conflict with the mandate of *Kidder*. Accordingly, the modified declaratory judgment and injunction order are further modified to conform to the requirements of this opinion. The case is remanded to the district court for entry of a judgment and injunction incorporating the additional modifications.

## BACKGROUND

The facts of this case are set forth fully in our *Kidder* opinion, and are reviewed only as pertinent here. In 1983, Diamond Shamrock Corporation ("Diamond Shamrock"), a Delaware corporation, retained plaintiff-appellee Kidder, Peabody & Co., Inc. ("Kidder"), a Delaware corporation, to provide advice about an acquisition. Kidder recommended that Diamond Shamrock acquire Natomas Company ("Natomas"), a California corporation. In the ensuing "friendly" merger transaction, consummated in July and August of 1983, Diamond Shamrock and Natomas became wholly owned subsidiaries of a newly created holding company, the predecessor of Maxus Energy. The consideration paid to Diamond Shamrock and Natomas shareholders was the stock of the new holding company: one share of new stock was exchanged for each Diamond Shamrock share, and 1.05 shares of new stock were exchanged for each Natomas share. At the completion of the transactions, former Diamond Shamrock shareholders owned 54% of the new holding company, and former Natomas shareholders owned 46% of the new holding company.

On February 13, 1987, the Securities and Exchange Commission brought a complaint against Martin A. Siegel, a vice president and director of Kidder, who had headed Kidder's team of investment advisors in the Diamond Shamrock merger transaction. The complaint charged Siegel with leaking information on the Natomas acquisition to Ivan Boesky. Based on the inside information, Boesky then purchased large quantities of Natomas stock. Maxus Energy alleges that, in effect, it overpaid for Natomas, because the Boesky purchases drove up the price of Natomas stock during merger negotiations and led to the offer of a higher price (i.e., a larger exchange ratio) than otherwise would have been the case.

On November 23, 1987, Maxus Corporate, claiming to be the successor to Diamond Shamrock after a post-merger corporate reorganization, filed suit against Kidder in Texas state court. Maxus Corporate asserted Texas state law claims for breach of contract, breach of fiduciary duty, fraud, conversion, negligence and violations of the Texas Business and Commerce Code. Maxus Corporate sought to recover (i) more than $4 million in fees and expenses paid to Kidder under financial adviser and dealer-manager agreements, (ii) more than $56 million in out-of-pocket costs incurred in the Natomas acquisition, (iii) losses allegedly incurred in having been fraudulently induced to acquire Natomas, (iv) the inflated amount allegedly paid to acquire Natomas because of the unlawful conduct of Kidder, Siegel and Boesky, and (v) punitive damages. The same day, Kidder initiated a declaratory judgment action in the Southern District of New York against Maxus Energy, Siegel and Boesky. Kidder's complaint later was amended to add Maxus Corporate as a party. Kidder sought a declaration that it was not liable to the Maxus entities under sections 10(b) or 14(e) of the Securities Exchange Act of 1934, or

on the Texas state law claims; and that if Kidder were liable, it was entitled to indemnification or contribution from Siegel and Boesky.

On March 26, 1990, the district court issued an order, which was followed on April 13, 1990, by entry of a judgment, denying the motions of Maxus Energy and Maxus Corporate to dismiss the declaratory judgment action, and declaring that Kidder was not liable to either of the Maxus entities under sections 10(b) and 14(e) of the 1934 Act. In the fifth paragraph of the declaratory judgment, the district court stated that "[t]he exchange ratios of the negotiated, stock for stock, distribution of the equity stock of the new holding company to the stockholders of Natomas Company and (Old) Diamond Shamrock Corporation are not subject to retroactive adjustment on claims by Diamond Shamrock," and that Maxus Energy and Maxus Corporate, because they were created after the alleged insider trading, "suffered no cognizable injury" in connection with the transactions. In the seventh paragraph of the declaratory judgment, the district court concluded that "[t]he balance of [Kidder's] claims to declaratory relief, essentially based on its fee controversy with Diamond Shamrock, are pendent state claims over which this Court declines to exercise jurisdiction."

Kidder subsequently moved in the Texas state court for summary judgment on the grounds that Maxus Corporate's state law claims were barred by the doctrine of res judicata. Kidder based its motion principally on paragraph five of the district court's judgment. The Texas court denied the motion. Thereafter, in the third paragraph of an injunction order dated June 23, 1990, the district court enjoined the Maxus entities from asserting or pursuing in any court any claim, however denominated or characterized, "arising from the merger exchange formula, as well as what led up to it, in the stock-for-stock merger."

Maxus Energy and Maxus Corporate appealed both the declaratory judgment and the injunction order to this Court, and we affirmed in part and reversed in part. See

*Kidder*, 925 F.2d at 558. We held that it was appropriate for the district court to have resolved the federal securities claims, and to have enjoined relitigation of those claims "no matter how denominated." See *id.* at 562–63, 565. However, we also held that in paragraph five of the judgment, the district court had erred insofar as it had retained jurisdiction over, and disposed of on the merits, the Texas state law claims. See *id.* at 563–64. Accordingly, we concluded that the injunction exceeded the bounds of a proper declaratory judgment, and reversed the injunction "to the extent that it precludes litigation of the claims for damages under Texas law." See *id.* at 565.

On June 14, 1991, the district court modified its declaratory judgment and injunction order in light of our decision in *Kidder*. Paragraph five of the original judgment was retained in its entirety, although the phrase "and Maxus is enjoined from relitigating the said federal matters and claims presented to and decided by this Court no matter how denominated" was added at the end of the paragraph. Paragraph seven of the original judgment was deleted in its entirety. A new paragraph seven provided that (i) Kidder's "claims to declaratory relief based on any state-created claims and for damages thereon are pendent state claims over which this Court declines to exercise jurisdiction"; (ii) the "federal claims of liability or causes of action or forms of relief, no matter how denominated, presented to and decided by this Court in favor of [Kidder] on the ground of no liability to Maxus thereon and, consequently, of no damage to Maxus, may not be relitigated in state court, including, without limitation, the federal claims arising from" the Boesky insider trading and the merger exchange formula; and (iii) "[t]his injunction does not refer to or include litigation in state court of any liability on any state-created claims or damages thereon not embraced by the federal claims of liability herein and damages thereon."

The district court also deleted paragraph three of the original injunction order. A new paragraph three enjoined relitigation of claims decided by the district court "un-

der federal law ..., no matter how denominated," including claims pertaining to the Boesky insider trading and the merger exchange formula, and concluded with language substantially the same as that set forth in item (iii) above.

## DISCUSSION

■ Under the doctrine of law of the case, a district court generally may not deviate from a mandate issued by an appellate court, see Briggs v. Pennsylvania R.R. Co., 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948), and the appellate court retains the right to control the actions of the district court where the mandate has been misconstrued or has not been given full effect, see In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 293, 40 L.Ed. 414 (1895). Indeed, because the district court has no discretion in carrying out the mandate, the appellate court retains the authority to determine whether the terms of the mandate have been "scrupulously and fully carried out." United States v. E.I. Du Pont De Nemours & Co., 366 U.S. 316, 325, 81 S.Ct. 1243, 1249, 6 L.Ed.2d 318 (1961). The district court's actions on remand should not be inconsistent with either the express terms or the spirit of the mandate. See Quern v. Jordan, 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148, n. 18, 59 L.Ed.2d 358 (1979).

■ In light of these considerations, we are troubled by the district court's retention, in the modified judgment, of paragraph five of the original judgment. In Kidder, we specifically identified paragraph five of the original judgment as the principal source of our disagreement with the district court:

We think that paragraph five of the judgment disposes of issues pertaining to state law claims, notwithstanding the subsequent declaration of the court in the seventh paragraph. The state law issues it disposes of [relate] to damages, the district court having held that Maxus suffered no injury as a result of the exchange of stock. However, we find that once the 1934 Act claims were resolved in Kidder's favor, it was unneces-

sary to declare that Maxus Corporate could not seek damages on any claim that it might assert in the Texas action under Texas law.

Kidder, 925 F.2d at 563. In short, our mandate was that Maxus Corporate should be left free to pursue its Texas state law claims in the Texas state court. In reaching this conclusion, we determined that the interests of federalism and comity outweighed the interests of judicial economy in this case. See id. at 563–64. The Texas proceedings were almost at the discovery stage, and the issue of damages was directly before the Texas court. See id. at 564. We emphasized that the question of whether the Texas state law claims were barred by the so-called "contemporaneous ownership" standing requirement, addressed in Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co., 417 U.S. 703, 94 S.Ct. 2578, 41 L.Ed.2d 418 (1974) (purchaser of substantially all of a corporation's shares may lack standing to assert federal or state claims for damages resulting from prior misconduct, where purchaser was not shareholder at time of misconduct towards the corporation), was a question that the Texas state court could "capably and competently decide." See Kidder, 925 F.2d at 564. We also pointed out that district courts should refrain from reaching out for issues and depriving state courts of an opportunity to develop and apply state law, and that Maxus Corporate's choice of forum for its state law claims should be honored. See id.

Accordingly, the retention of paragraph five may suggest that Maxus is not free to pursue its Texas state law claims, thus defeating the interests of comity and federalism we sought to protect in our Kidder decision. We recognize that the district court, in an effort to comply with our mandate, added to the original paragraph five the "said federal matters and claims" language set forth previously, and that this new language could be interpreted to limit the entire paragraph to federal matters and claims. We are also aware that in its memorandum accompanying the modified judg-

ment and injunction, the district court stated:

> This Court's statement ... that 'Maxus suffered no cognizable injury' must, under the Court of Appeals ruling[,] herein be referable only to cognizable federal liability and injury and not keyed to any notion of state law consequential damage from breach of contract, negligence, fraud or other state-created claims giving rise to cognizable state liability and injury.

However, while we are confident that the district court believed that it narrowed the scope of paragraph five in accordance with our mandate, a disinterested party reading paragraph five could reasonably draw the conclusion that Maxus Corporate still is precluded from pursuing certain of its Texas state law claims. The word "federal" does not appear anywhere in paragraph five prior to the new "said federal matters and claims" language. Therefore, the new language does not clearly limit the preceding language of the paragraph to federal matters and claims. The language of paragraph five continues to be broad and uncompromising in all important respects— namely, that the Maxus entities suffered "no cognizable injury" from the transactions because they did not exist at the time of the alleged wrongdoings—and thus continues to invite the conclusion that the share ownership and standing issues discussed in *Bangor Punta* have been decided by the district court even as to the Texas state law claims.

Indeed, in its March 26, 1990 order preceding entry of the original declaratory judgment, the district court cited, as authority for its conclusion that the Maxus entities suffered no cognizable injury because those entities did not exist at the time of the alleged misconduct, a portion of the *Bangor Punta* opinion apparently relating to the state law claims involved in that case. Further, the district court itself has recognized, since the early stages of this litigation, the broad preclusive effect of paragraph five as it pertains to the exchange ratios issue. In a memorandum dated July 18, 1990, and relating to its original injunction order, the district court

stated: *"Any claims,* no matter whether denominated federal or state[,] challenging the consideration paid to Diamond Shamrock necessarily and fundamentally rests on the same nucleus of operative fact. This was made clear *beyond peradventure of doubt* by the allusion to the *Bangor Punta* doctrine in the Court's opinion ... and *paragraph "5" of the declaratory judgment."* (emphasis added). We note also that, in moving for summary judgment in the Texas state court on the state law claims, Kidder focused on paragraph five of the district court's original judgment. *See Kidder,* 925 F.2d at 560.

For these reasons, paragraph five of the modified judgment may continue to preclude litigation of those Texas state law claims that we determined Maxus should be left free to pursue. Accordingly, and to remove any doubt from the matter, it is our decision that paragraph five of the modified judgment must be deleted in its entirety.

The modified injunction, which parallels the modified judgment, is similarly troubling. We held in *Kidder* that the district court properly could decide, and enjoin relitigation of, federal claims "no matter how denominated." *See Kidder,* 925 F.2d at 565. However, rather than referring only to federal claims "no matter how denominated," paragraph three of the modified injunction, and paragraph seven of the modified judgment, conclude by indicating that any "state-created claims or damages thereon ... *embraced by* the federal claims of liability herein and damages thereon" are enjoined. (emphasis added). Our mandate in *Kidder* meant only that, for example, a section 10(b) claim could not be relabelled and realleged. We did not suggest that a state law claim could be enjoined simply because it shares some common characteristics with federal claims. Such a result would be at odds with the purpose of the *Kidder* mandate.

Moreover, the federal claims at issue in this case were decided in favor of Kidder on the basis of the renouncement of those claims by the Maxus entities. The federal claims were not decided, for example, on

the basis that one of the substantive elements of a section 10(b) claim could not be proven. Therefore, the "embraced by" language employed by the district court to describe the scope of the new injunction could reasonably be interpreted to mean that Maxus Corporate is enjoined from pursuing its state law claims for the same reason that federal claims could not be asserted. In this connection, we note that in its memorandum dated June 14, 1991, and accompanying the modified judgment and injunction, the district court stated: "The Bangor Punta rule *was litigated herein*—it was presented and decided as applicable to the federal issues. As matter of law, *the rule is equally applicable under Texas state law and Delaware state law* as part of state jurisprudence, a point Maxus has overlooked or ignored." (emphasis added). We are confident that by this statement the district court meant only that the state courts would have to decide the *Bangor Punta* issues as to the state law claims. However, we are constrained to say that a reasonable person, reading this statement together with the modified judgment and injunction, could draw a different conclusion.

Accordingly, and to remove any doubt from the matter, it is our decision that the final sentence of paragraph seven of the modified judgment and of paragraph three of the modified injunction must be eliminated and replaced with the following: "This injunction does not refer to or include litigation of any liability on any state-created claims or damages thereon."

It is important to recognize that the *Bangor Punta* decision itself suggests the propriety of leaving to the state courts, wherever possible, the question of shareholder ownership and standing requirements with respect to state law claims. The real-party plaintiff in *Bangor Punta* had purchased the stock of a subsidiary corporation from the subsidiary's previous owners, and asserted both federal and Maine state law claims against the sellers for misconduct towards the subsidiary prior to the time of purchase. With respect to the state law claims, the Court made a specific effort to decide whether Maine had adopted a contemporaneous share ownership standing requirement, and decided that a Maine court probably would adopt such a standing requirement. *See Bangor Punta*, 417 U.S. at 713–15 & n. 9, 94 S.Ct. at 2584–85 & n. 9. Indeed, the Court noted that since the suit had been filed, the Maine legislature had amended the state's Corporation Act to include a contemporaneous ownership standing requirement. *See id.* at 714 n. 9, 94 S.Ct. at 2584 n. 9. The Court also refused to reach the question of whether the contemporaneous ownership requirement of Fed.R.Civ.P. 23.1 applies to pendent state law claims in federal court, further indicating the importance placed by the Court on applying state law standing requirements to state law claims. *See id.* at 708 & n. 4, 94 S.Ct. at 2582 & n. 4.

We note as well that the Texas state court appears to be prepared to resolve the applicability of *Bangor Punta* to the state law claims. At a hearing on June 15, 1990, the Texas state court judge stated:

I agree that under the Securities Act, under the *Bangor Punta* decision, it says you don't have equitable standing to go back and—to have this retroactive adjustment. For example in the exchange ratio, you can't have this windfall, and you can't proceed under the Securities Act for that remedy. But I don't know that that necessarily applies to the state court causes of action and their elements and the damages sought there, which is not necessarily … the exchange ratios and the insider trading.

The Texas state court should be given the opportunity to resolve these issues under applicable state law. In view of the complexities of the Diamond Shamrock merger transaction, it is not obvious to us, as it was not obvious to the Texas state court judge, that traditional state contemporaneous ownership requirements apply to the specific state law claims asserted by Maxus Corporate.

CONCLUSION

The modified declaratory judgment and injunction order of the district court are further modified to conform to the require-

ments of this opinion. The case is remanded to the district court for entry of a judgment and injunction consistent with the foregoing.