**In re CERTAIN UNDERWRITER, Defendants,**

**In re INITIAL PUBLIC OFFERING SECURITIES LITIGATION, Petitioners–Appellants.**

**Docket No. 01–3092.**

United States Court of Appeals, Second Circuit.

Submitted: Feb. 8, 2002.

Decided: April 1, 2002.

cial Counsel for Petitioners–Appellants.**

Before: POOLER and SOTOMAYOR, Circuit Judges, and GARAUFIS, District Judge.*

POOLER, Circuit Judge.

Determined to recover losses sustained in the initial public offering ("IPO") market which flourished during the stock market boom of the late 1990s, investor-plaintiffs brought more than 1,000 class action lawsuits (the "Securities Actions") against issuers, underwriters, and brokers, all alleging widespread manipulation of both the IPO market and IPO aftermarket. *In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d 70, 75 (S.D.N.Y.2001). On August 8, 2001, Chief Judge Michael B. Mukasey signed an order transferring all of the Securities Actions for pre-trial purposes to the Hon. Shira A. Scheindlin, district judge for the United States District Court for the Southern District of New York. Certain defendants asked Judge Scheindlin to recuse herself from the Securities Actions. She refused. Thirty-nine of the defendant underwriting firms (the "Moving Defendants") now petition for a writ of mandamus reversing the November 28, 2001, opinion and order of the district court (Scheindlin, *J.*) denying their motion for recusal under 28 U.S.C. § 455. In seeking the district judge's removal, the Moving Defendants primarily argue that (1) the district court judge's financial and legal interests, as well as knowledge acquired during her participation as a private investor in several IPOs, mandate recusal under 28 U.S.C.

§ 455(b)(1), (4) and (5); (2) 28 U.S.C. § 455 does not permit a district court judge to cure a conflict by divesting the offending interest unless substantial judicial time has been invested; (3) substantial judicial time has not been invested here because the Securities Actions were not consolidated and transferred until August 2001; and (4) comments made by the district court judge, along with her divestment of certain stocks to retain jurisdiction, create an appearance of partiality requiring her recusal under 28 U.S.C. § 455(a). Because we find the district court expended substantial judicial time in the Securities Actions before the recusal motion was made, and because we do not believe an appearance of bias exists, we deny the writ.

## BACKGROUND

*The underlying actions*

The Securities Actions allege defendants manipulated the IPO and IPO aftermarkets in a variety of ways, including nondisclosure of commissions and other compensation, undisclosed pre-arranged tie-in arrangements wherein purchasers who participated in an IPO were required to buy stock in the IPO's aftermarket, and the issuance of misleading analysts' reports.[1] The putative class includes all investors who bought the stocks at issue from the date of the IPO through December 2000. *In re Initial Pub. Secs. Litig.*, 174 F.Supp.2d at 75. Complaints were originally assigned randomly to judges in the Southern District of New York, but were transferred to Judge Scheindlin for

---

** A list of counsel entering appearances on this appeal, along with the petitioning parties, is attached as Appendix A.

* The Honorable Nicholas G. Garaufis, United States District Court Judge for the Eastern District of New York, sitting by designation.

1. The claims alleged in the consolidated complaints, *In re VA Linux Securities Litigation*, No. 01 Civ. 0242 (S.D.N.Y.) (SAS), and *In re Calico Commerce Securities Litigation*, No. 01 Civ. 2601 (S.D.N.Y.) (SAS), are cited by the Moving Defendants and offered here as examples.

pre-trial purposes on August 8, 2001, by order of Chief Judge Mukasey.

In addition, nine separate antitrust actions were filed in the Southern District, consolidated under the caption *In re Initial Public Offering Antitrust Litigation,* 01 Civ.2014 (S.D.N.Y.), (the "Antitrust Actions") and assigned to the Hon. William H. Pauley, III. *In re Initial Pub. Offering Secs. Litig.,* 174 F.Supp.2d at 75–76 and n. 3. The Antitrust Actions also allege "[d]efendants manipulated the prices of securities brought to market in the IPOs traded in the aftermarkets" and include in their putative class "all persons who purchased any of the Manipulated Securities in the aftermarket of IPOs conducted by the [d]efendants from March 1997 through the present." [2]

*The district judge's alleged conflicts*

Prior to consolidation of the Securities Actions, Judge Scheindlin presided over eight cases involving an IPO for Internet Capital Group. *In re Initial Pub. Offering Sec. Litig.,* 174 F.Supp.2d at 77. The district judge notified parties that she had purchased and sold the stock at a small profit, and she opted out of membership in any class action involving that IPO. *Id.* None of the parties sought her recusal. *Id.* A similar divestment occurred in two actions involving the IPO for Breakaway Solutions. *Id.* Judge Scheindlin informed the parties that she purchased that stock in July 2000 and sold it in August 2001 at a loss. *Id.* Again, the district court judge opted out of any class action involving that IPO. *Id.* Again, none of the parties sought her recusal. *Id.*

After the transfer of the Securities Actions, and following the issuance of the first case management order and case management conference, several defendants asked to meet with the district court judge regarding potential conflicts. *In re Initial Pub. Offering Sec. Litig.,* 174 F.Supp.2d at 77. Following that inquiry, Judge Scheindlin asked the parties to perform a conflicts check, due to what she termed "the extraordinarily large number of disclosure statements filed pursuant to Rule 1.9 of the Joint Local Civil Rules for the Southern and Eastern Districts of New York." [3] *Id.* at 77. That check revealed a number of previously undisclosed conflicts. *Id.* at 78. The district court judge held stock in Infospace.com and Kana Communications. *Id.* Kana Communications is a defendant in the Securities Actions. While Infospace.com is not a defendant in any of the Securities Actions, the Moving Defendants argue Infospace.com is implicated in one of the Securities Actions, *Klein v. Merrill Lynch,* 01 Civ. 7654 (S.D.N.Y.) (SAS). *In re Initial Pub. Offering Sec. Litig.,* 174 F.Supp.2d at 78. The allegations in *Klein* involve an IPO for Internet Infrastructure Holdrs, a "basket security" which "represent[s] an undivided beneficial ownership interest in 20 specified internet infrastructure companies." *Id.* (internal quotation marks omitted). Infospace.com, along with Kana Communications, is one of the specified companies included in the basket, although the *Klein* complaint did not include purchasers of the constituent stocks as plaintiffs. *Id.* The district court judge informed parties she was unaware of

---

**2.** The claims alleged in *Thomas v. Credit Suisse First Boston Corp.,* 01 Civ. 5919 (S.D.N.Y.) (WHP), are cited by the Moving Defendants and are used here as examples.

**3.** Local Rule 1.9 provides in pertinent part, "[t]o enable judges and magistrate judges of the court to evaluate possible disqualification

or recusal, counsel for a private (non-governmental) party shall submit at the time of filing the initial pleading or other court paper ... on behalf of that party a certificate of identification of any corporate or other parents, subsidiaries, or affiliates of that party, securities or other interests in which are publicly held."

the conflicts at the time of the reassignments in August, immediately sold both stocks, and waived any interest in pursuing claims involving those purchases. *Id.* at 79.

In addition, the Moving Defendants identified a number of stocks deemed troublesome because the stocks were sold through IPOs from 1997 through 2000, and thus may be implicated in the Antitrust Actions. Of the ten stocks not previously discussed, seven were sold by Judge Scheindlin prior to any of the Securities Actions being filed. *In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 79. The district court judge continues to hold two of the stocks, while the remaining stock merged with Hewlett–Packard, Co., which did not issue an IPO during the relevant time period. *Id.* The district judge also waived any interests she may have held as a putative class member in the Securities Actions and Antitrust Actions. The Moving Defendants also identified as a conflict a stock owned by Judge Scheindlin's adult son in one of the issuer defendants. *Id.* The district judge never learned the identity of the stock, and her son sold the stock at issue and waived any interest in participating in any action arising from that investment. *Id.* at 80.

*The district judge's comments*

The Moving Defendants also rely on comments made by the district judge to support their recusal motion. The first of the comments at issue were made at a July 18, 2001, conference regarding the Internet Capital cases:

> All I know is the broker called and said this a good stock [to] buy and I said sure, then the next day she called and said this is a good stock [to] sell and I said sure. That's it. Sad to say, very sad to say, I don't read anything I should read. And that's the end of it. So I know nothing . . . . I think I proba-

bly am not in the class by definition anyway, because I made money, and if I was in it, I don't want to be in it, I opt out, and I don't know anything other than there is that name on the list of things that were bought and sold that year—who has a problem? . . . I know nothing. I read nothing. Nobody tells me anything. I am really one of those sad investors. The brokers call, I say yes, goodbye; they say sell, I say yes, goodbye. I regret all of my yeses for all these past few years. Every one was a mistake. But that is what I know.

The district judge expanded on those comments during a September 26, 2001, conference:

> And to get specific[,] to discuss that it would be everything that has gone down, which as far as I can tell is techs and everything else that I bought some of my worst losers were REITs. I was absolutely creamed in REITs from the broker, KMart, Elder Trust, corporate office properties, there was a whole slew of that. I apparently just am not talented at this in general and would not pick a stock ever again of any variety. So, I say that again and I say broadly, whether it was REITS, whether it was techs, whether it was blue chips, I regret every yes.

*Work done on the Securities Actions from the consolidation through the recusal motion*

More than 2,000 entries have been docketed in the consolidated action, which involves at least 1,000 class action lawsuits against 263 issuers, 42 underwriters and hundreds of individuals. *In re Initial Pub. Offering Secs. Litig.*, 174 F.Supp.2d at 75. According to the district judge, "[w]hile a great deal of organizational time and effort has been expended, this Court has not made any substantive decisions."

*Id.* at 76. Judge Scheindlin has "supervised administrative staff in organizing the unprecedented" number of class actions and held meetings with court members and staff, including additional staff hired to handle the extra work created by the consolidated action. *Id.* The district judge also "prepared and issued a multi-page Case Management Order, which required hundreds of case management submissions and the processing of those submissions." *Id.* The first case management conference, attended by hundreds of attorneys, required a detailed Case Management Agenda. *Id.* Hundreds of lead plaintiff and lead counsel motions have been filed. *Id.* In addition, the district judge assisted in the formation of a Plaintiffs' Executive Committee, Steering Committee, and the selection of Plaintiffs' Liaison Counsel. *Id.* The district judge also decided which cases belonged in the consolidation and which needed to be assigned to a different judge. *Id.* Finally, the district court signed numerous orders permitting the appearance of counsel *pro hac vice* and consolidating cases by issuer. *Id.* at 76 fn. 5.

## DISCUSSION

■ We review the denial of a motion to recuse for abuse of discretion. *In re Aguinda,* 241 F.3d 194, 200 (2d Cir.2001). "An error of law or fact would constitute an abuse of discretion, but we are nevertheless free to affirm an appealed decision on any ground which finds support in the record." *Beal v. Stern,* 184 F.3d 117, 122 (2d Cir.1999) (internal quotation marks and citation omitted). Further, we will not grant "the exceptional remedy of mandamus" except "where the petitioner has demonstrated that its right to such relief is clear and *indisputable.*" *In re Drexel Burnham Lambert, Inc.,* 861 F.2d 1307, 1312 (2d Cir.1988) (internal quotation marks omitted) (emphasis in original). Thus, our analysis requires we consider "not only the standards governing recusal" but "the extraordinary showing required to obtain the issuance of a writ of mandamus." *Id.* Petitioners bear the burden of "clearly and indisputably" proving "the district court abused its discretion. Absent such a showing, mandamus will not lie." *Id.* at 1312–13.

■ The discretion to consider disqualification rests with the district judge in the first instance. *Drexel,* 861 F.2d at 1312. "The reasons for this are plain. The judge presiding over a case is in the best position to appreciate the implications of those matters alleged in a recusal motion." *Id.* A judge considering recusal must balance the need for "public confidence in the judiciary against the possibility that those questioning [her] impartiality might be seeking to avoid the adverse consequences of [her] presiding over their case." *Id.* Finally, a district judge "is as much obliged not to recuse" herself unnecessarily as she is obliged to recuse herself when necessary. *Id.*

### 28 U.S.C. § 455(b), (f)

On appeal, the Moving Defendants first argue (1) the district court judge's interests mandate recusal under 28 U.S.C. § 455(b)(4); (2) her participation in several IPOs gives her "personal knowledge of disputed evidentiary facts" requiring recusal under § 455(b)(1); and (3) as a putative class member, she is "a party to the proceeding" forcing recusal under § 455(b)(5)(i). The district court rejected all three grounds for recusal. Judge Scheindlin found she properly cured any conflict by promptly divesting of the stocks at issue and by waiving any interest in both the Securities Actions and the Antitrust Actions. *In re Initial Pub. Secs. Offering,* 174 F.Supp.2d at 90–92. The district judge also found her experiences of

investing in several IPOs did not give her knowledge of "disputed evidentiary facts," *id.* at 93–95, and that her waiver of interests meant she was not a party to a proceeding. *Id.* at 92–93. As we find recusal unnecessary based on the district court's investment of substantial judicial time in the Securities Actions, we offer no opinion as to the district court's findings regarding 28 U.S.C. § 455(b)(4)[4].

The statute governing recusal, 28 U.S.C. § 455 appears to mandate recusal under certain circumstances, such as when a judge is a party to, or has a financial interest in, a proceeding.[5]

There is, however, an exception:

Notwithstanding the preceding provisions of this section, if any … judge … to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge … divests … herself of the interest that provides the grounds for disqualification.

28 U.S.C. § 455(f). The statute defines a "financial interest" in relevant part as "ownership of a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4). Therefore, if the discovery of Judge Scheindlin's IPO investments came after "substantial judicial time" was devoted to the Securities Actions, and her interest was not one that could be substantially affected by the outcome, she could properly divest herself of the securities involved in the litigation without recusing herself on the basis of her stock ownership. 28 U.S.C. § 455(f); *see Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir.1991).

---

**4.** On January 4, 2002, the Moving Defendants made a motion to file under seal the affidavits of two experts on legal ethics, which the district court had *sua sponte* placed under seal. We granted that motion January 22, 2002.

**5.** The statute governing recusal, 28 U.S.C. § 455, provides in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned.

(b) [She] shall also disqualify [her]self in the following circumstances:

(1) Where [she] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice [she] served as [a] lawyer in the matter in controversy, or a lawyer with whom [she] previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it;

(3) Where [she] has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) [She] knows that [she] individually or as a fiduciary, or her spouse or minor child residing in her household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

(5) [She] or [her] spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(I) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

■■. Congress enacted § 455(f) to solve "a specific problem that has arisen as a consequence of existing disqualification requirements and their application in class action cases." H.R.Rep. No. 100–889, *reprinted in* 1988 U.S.C.C.A.N. 5982, 6029. Specifically, Congress was troubled by the outcome of *In re Cement and Concrete Antitrust Litigation*, 515 F.Supp. 1076 (D.Ariz.1981), in which a district court judge was forced to recuse himself, after five years, from a class action because it was discovered his wife owned stock in seven of 210,000 class members. *Id.* Section 455(f) was created:

> to permit a judge or his or her spouse or minor children to resolve the conflict by divesting themselves of the property creating the conflict. Disqualification would continue to be automatic if the interest in the controversy was one that could be substantially affected by the outcome. For example, a significant stockholder in a closely held corporation with close acquaintances would be expected to recuse himself or herself rather than divest.

1988 U.S.C.C.A.N. 6029–30. The case before us falls squarely within the situation envisioned by Congress—a district judge with a minor interest in a class action lawsuit discovered after assignment, who quickly divested herself of the conflicting interest. Congress clearly did not envision class membership as an interest "substantially affected by the outcome," otherwise § 455(f) could not solve the very problem it was meant to remedy.

■■ We turn then to the issue of whether the district court "devoted substantial judicial time." The statute does not define "substantial judicial time." The district court discussed § 455(f) in support of its argument that it could prospectively divest of conflicting stocks before substantial judicial time was invested. *In re Initial Pub. Secs. Offering Litig.*, 174 F.Supp.2d at 86–87. We think the district court failed to appreciate the application of § 455(f) to the recusal motion. We hold measuring "substantial judicial time" means examining the time and effort a district court invests in a matter, rather than simply counting off days on the calender to see if "substantial" time passed. The inquiry is thus properly focused on the amount of work a case requires, not on calender time. In some matters, months may pass with little or no involvement by the district court, requiring a finding that substantial judicial time has not been devoted. Other cases will, in a matter of weeks, demand a great deal of the court's time and attention. For example, little judicial time would probably be expended on a typical employment discrimination action within the first few months of assignment. In contrast, the Securities Actions required a herculean organizational effort upon assignment, with the docket reflecting the entry of more than 2,000 items. Organizational work may be the grunt work of the judicial system, but it is as necessary and vital to its success as motion and trial practice. We recognize that this case is unusual in requiring the devotion of significant judicial resources early on, and suspect that in most cases the passage of calender time will closely track the devotion of judicial time. *Compare Tramonte v. Chrysler Corp.*, 136 F.3d 1025, 1031–32 (5th Cir.1998) (substantial judicial time exception not available where the docket reflects little time devoted to the matter), *and Gordon v. Reliant Energy Inc.*, 141 F.Supp.2d 1041, 1045 (S.D.Cal.2001) (same), *with Baldwin Hardware Corp. v. Franksu Enter. Corp.*, 78 F.3d 550, 555–56 (Fed.Cir.1996) (substantial judicial time expended when discovery of conflicting interest came during trial), *and Kidder, Peabody*, 925 F.2d at 561 (substantial judicial time expended when discovery of conflict-

ing interest came three years into the litigation).

■ We dispense quickly with the Moving Defendant's remaining arguments relying on § 455(b) and (f). The Moving Defendants contend the district judge must recuse herself because she was a "party to the proceeding" under § 455(b)(5)(i). As the legislative history makes clear, Congress did not consider judges with minor interests in a class action to be parties to a proceeding once they have divested themselves of said financial interest. Thus, recusal is not necessary on these grounds. 1988 U.S.C.C.A.N. 6029–30. The Moving Defendants also argue recusal is necessary under § 455(b)(1), but fail to show the district court judge had any "personal knowledge of disputed evidentiary facts" as required by the statute. Therefore, because the district court "devoted substantial judicial time" to the Securities Actions, the district judge properly divested her interests through sale and waiver and did not abuse her discretion in declining to recuse.

*28 U.S.C. § 455(a)*

The Moving Defendants also argue recusal is necessary because the district judge's partiality "might reasonably be questioned." 28 U.S.C. § 455(a). According to the Moving Defendants, the district judge displayed her partiality in remarks made during court conferences that expressed "sadness" for her stock losses, and by divesting herself of stocks and waiving her interests as a putative class member in order to continue presiding. We disagree and find neither Judge Scheindlin's words nor her actions give rise to the appearance of partiality.

Examination of the reasons given for recusal under § 455(a) "is not mechanical but requires an exercise of reasoned judgment." *Aguinda*, 241 F.3d at 201. "[T]he

grounds asserted in a recusal motion must be scrutinized with care, and judges should not recuse themselves solely because a party claims an appearance of partiality." *Id.* Thus, we have:

> reminded litigants that Section 455(a) requires a showing that would cause an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal. Where a case ... involves remote, contingent, indirect or speculative interests, disqualification is not required. Moreover, where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited.

*Id.* (internal quotation marks and citations omitted).

■ We first address the district court's contention that where recusal is sought under § 455(a) and (b), analysis under § 455(a) is limited only to those facts not implicated by the analysis under § 455(b). *In re Initial Public Offering Secs. Lit.*, 174 F.Supp.2d at 97. The district court reasoned, "Congress already fully considered how courts should handle financial interests in a party or a case in subsection (b). Section 455(a) was passed to serve as a catchall for situations not covered by the rest of the statute, not to duplicate those grounds for disqualification." *Id.* (footnote omitted). Thus, the district court stated, "[i]t is beyond cavil that these same facts cannot mandate recusal under subsection (a)." *Id.* We disagree. A fact's failure to give rise to recusal under § 455(b) does not automatically mean that same fact does not create an appearance of partiality under § 455(a). Section 455(b) sets forth various situations where recusal would be required, including when a judge has an actual personal bias, served as a lawyer in the matter in controversy during private practice, or holds a financial interest in a

party. Even where the facts do not suffice for recusal under § 455(b), however, those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a). The two sections focus on different types of conflicts requiring recusal. Section 455(b) focuses on interests and situations which raise conflicts, while:

> [t]he goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give [her] an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (internal citation and quotation marks omitted).

■ However, we do not think the facts here raise an appearance of partiality requiring recusal. Looking at the facts fully from the perspective of an "objective, disinterested observer," we find they show a district judge who actively invested in a variety of securities, including some of the IPOs at issue here. Some of those investments returned a profit, some of those investments were sold at a loss. The judge relied on a broker's advice in choosing her investments. The judge also expressed regret about losing money in a variety of different investments, not just the ones at issue here. Judge Scheindlin promptly disclosed conflicts as they were discovered, and acted quickly to meet the Moving Defendants' concerns regarding other conflicts. She waived any interest she may have had as a class member in the Securities Actions and the Antitrust Actions. We cannot say these facts show the district court abused its discretion in denying the motion to recuse pursuant to § 455(a).

## CONCLUSION

For the reasons given above, the petition is denied.

### Appendix A

**Parties and counsel entering appearances on this appeal**

Gandolfo V. DiBlasi, John L. Hardiman, Penny Shane, David M.J. Rein, Sullivan & Cromwell, New York, NY, *for The Goldman Sachs Group, Inc. and Goldman, Sachs & Co Inc., and Liaison Counsel for the Underwriter Defendants.*

Daniel P. Tighe, Andrew C. Griesinger, Griesinger, Walsh & Maffei, LLP, Boston, MA, *for Adams, Harkness & Hill.*

Kevin J. Toner, Heller Ehrman White & McAuliffe LLP, New York, NY, *for Allen & Co., Inc.*

Francis S. Chlapowski, Nicole M. Hunn, Brobeck, Phleger & Harrison LLP, New York, NY, *for Banc of America Securities, LLC (f/k/a Nationsbanc Montgomery Securities, LLC).*

Arthur D. Felsenfeld, Melissa Baal, Andrews & Kurth L.L.P., New York, NY, *for Bear, Stearns & Co., Inc.*

Michele A. Coffey, Morgan, Lewis & Bockius LLP, New York, NY, *for C.E. Unterberg, Towbin, Wit SoundView Corp., Wit Capital Corp., SoundView Technology Group, Inc., Wit SoundView Group, Inc. and E\*Offering Corp.*

Barry R. Ostrager, David W. Ichel, Simpson Thacher & Bartlett, New York, NY, *for Chase Securities, Inc., J.P. Morgan Chase & Co., Hambrecht & Quist LLC, J.P. Morgan Securities, Inc., and Robert Fleming, Inc.*

Jay B. Kasner, Scott Musoff, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, *for CIBC World Markets Corp. (All cases except Navisite and Global Crossing, Ltd.).*

Robert A. O'Hare, Jr., Christopher P. Parnagian, O'Hare Parnagian LLP, New York, NY, *for CIBC World Markets Corp.*

Robert B. McCaw, Fraser L. Hunter, Jr., Wilmer, Cutler & Pickering, New York, NY, *for Credit Suisse First Boston Corp., Donaldson, Lufkin & Jenrette, DLJ Securities, Inc., DLJ Direct, and Salomon Smith Barney, Inc.*

A. Robert Pietrzak, David B. Gordon, Sidley Austin Brown & Wood, LLP New York, NY, *for Deutsche Banc Alex. Brown, Inc.*

Jeffrey Barist, Douglas W. Henkin, Milbank, Tweed, Hadley & McCloy LLP, New York, NY, *for Deutsche Banc Alex. Brown, Inc. (f/k/a Deutsche Bank Securities, Inc. and B.T. Alex. Brown).*

John Donovan, Jr., Robert G. Jones, Ropes & Gray, Boston, MA, *for Fidelity Capital Markets.*

Bryan B. House, Foley & Lardner, Washington, D.C., *for Morgan Keegan & Co. and U.S. Bancorp Piper Jaffray, Inc.*

Moses Silverman, Andrew Tauber, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, *for Lehman Brothers Inc.*

James N. Benedict, Mark Holland, Clifford Chance Rogers & Wells LLP, New York, NY, *for Merrill Lynch, Pierce, Fenner & Smith Inc. and Merrill Lynch & Co., Inc.*

Stephen L. Ratner, Alyson M. Weiss, Rosenman & Colin LLP, New York, NY, *for Prudential Securities, Inc. and Volpe Brown Whelan & Co., LLC and Tucker Anthony Inc. and Tucker Anthony Cleary Gull, Inc.*

Y. David Scharf, Morrison Cohen Singer & Weinstein, New York, NY, *for Robert W. Baird & Co., Inc.*

Andrew J. Frackman, O'Melveny & Myers LLP, New York, NY, *for Robertson Stephens, Inc., (f/k/a as BancBoston Robertson Stephens, Inc. and FleetBoston Robertson Stephens, Inc.).*

Richard F. Ziegler, Mitchell A. Lowenthal, Cleary, Gottlieb, Steen & Hamilton, New York, NY, for *Thomas Weisel Partners LLC, UBSWarburg, Warburg Dillon Read LLC and UBS PaineWebber Inc.*

Michael Lawson, Steefel, Levitt & Weiss, San Francisco, CA, *for Wells Fargo Van Kasper (f/k/a First Security Van Kasper).*