THE CHASE MANHATTAN BANK, Natwest Bank National Association, Banque Paribas, European American Bank, Rabobank Nederland, and American. Express Bank Ltd., Plaintiffs–Appellees,

and

Andina Trading Corp. and Andina Coffee, Inc., Consolidated–Plaintiffs–Appellees,

v.

AFFILIATED FM INSURANCE COMPANY, Defendant–Appellant,

and

Lloyd's Syndicate No. 446, Lloyd's Syndicate No. 418, Lloyd's Syndicate No. 406, Lloyd's Syndicate No. 40, Lloyd's Syndicate No. 367, Lloyd's Syndicate No. 34, Lloyd's Syndicate No. 334, Lloyd's Syndicate No. 321, Lloyd's Syndicate No. 309, Lloyd's Syndicate No. 304, Lloyd's Syndicate No. 162, Lloyd's Syndicate No. 123, Lloyd's Syndicate No. 108, Lloyd's Syndicate No. 1014, Lloyd's Syndicate No. 52, Insurance Company of North America, Home Insurance Company, Phoenix Assurance Public Limited Company, Cornhill Insurance PlC, Commercial Assurance Co. PLC, River Thames Insurance Co. Ltd., Sovereign Marine & Gen. Ins. Co., Assicurazioni Generali S.P.A., Lloyd's Syndicate No. 447, Norwich Union Fire Insurance Society Ltd., Northern Assurance Company Limited, Lloyd's Syndicate No. 202, Lloyd's Syndicate No. 745, Lloyd's Syndicate No. 735, Lloyd's Syndicate No. 725, Lloyd's Syndicate No. 697, London & Hull Maritime Insurance Company Limited, Lloyd's Syndicate

No. 843, Lloyd's Syndicate No. 65, Lloyd's Syndicate No. 831, Lloyd's Syndicate No. 803, Lloyd's Syndicate No. 80, Lloyd's Syndicate No. 633, Lloyd's Syndicate No. 483, Lloyd's Syndicate No. 455, Lloyd's Syndicate No. 625, Lloyd's Syndicate No. 62, Lloyd's Syndicate No. 575, Lloyd's Syndicate No. 535, Lloyd's Syndicate No. 448, and Phoenix 'L' Account, Defendants.

Docket No. 00–9436.

United States Court of Appeals, Second Circuit.

Argued: Dec. 18, 2001.

Decided: Sept. 9, 2003.

Daniel P. Levitt, New York, N.Y. (H. Richard Chattman, Marianne C. Tolomeo, of counsel), for Defendant–Appellant.

Henry L. Goodman, Rosenman & Colin LLP, New York, New York, Wendy S. Walker, Morgan, Lewis & Bockius LLP, New York, New York, David G. Keyko, Pillsbury Winthrop LLP, New York, New York, Lloyd D. Feld, Andina Coffee, Inc. and Andina Trading Corp, Armonk, New York, John M. Toriello, Haight, Gardner, Holland & Knight, New York, New York, Robert S. Fischler, Winston & Strawn, New York, New York (Mark E. Segall, Caroline A. Mellusi, Menachem O. Zelmanovitz, Sheila E. Duggan, Michael R. Maiter, Valerie Fitch, David W. Oakland, Glenn J. Winuk, Brendan Fitzgerald Crowe, Edwin M. Larkin, of counsel), for Plaintiffs–Appellees.

Before: KEARSE, WINTER, and JACOBS, Circuit Judges.

Judge JACOBS concurs in a separate opinion.

WINTER, Senior Circuit Judge.

Affiliated FM Insurance Company ("Affiliated") appeals from a modified judgment entered by Judge Pollack, *see Chem. Bank v. Affiliated FM Ins. Co.*, No. 87 Civ. 0150(MP) (S.D.N.Y. Oct. 24, 2000)

(modified consolidated judgment on remand), after a remand by this court, *see Chem. Bank v. Affiliated FM Ins. Co.*, 196 F.3d 373 (2d Cir.1999), *cert. denied,* 531 U.S. 1074, 121 S.Ct. 767, 148 L.Ed.2d 667 (2001). The modified judgment awarded approximately $70 million in damages, fees, and prejudgment interest to Chemical Bank, and five other banks (collectively, the "Banks") and Andina Coffee, Inc. ("Andina"), a New York-based coffee importer. *See Chem. Bank,* No. 87 Civ. 0150(MP) (modified consolidated judgment on remand).

The issue on this appeal concerns the disqualification of the judge from presiding over this matter. Apparently because of the problems of staffing the White Plains courthouse with permanent judges, this case, like others, *see, e.g., Ramirez v. Atty. Gen. of N.Y.,* 280 F.3d 87, 93 n. 3 (2d Cir.2001), suffered from a series of transfers to various judges. Before the transfer to Judge Pollack, one of the original plaintiffs, Chemical Bank, merged with The Chase Manhattan Bank. The merged entity used the Chase name. After the merger, the judge, his wife, and a family trust purchased between $250,000 and $300,000 of stock in the merged entity. When the case was transferred to the judge for a bench trial, neither the caption nor the corporate disclosure form had been amended to reflect the merger, and, during subsequent proceedings, counsel and the court generally used the old name Chemical Bank, to refer to that plaintiff.

After the bench trial, the judge rendered a decision for the Banks, and a judgment of $92 million was entered. *See Chem. Bank v. Affiliated FM Ins. Co.,* 970 F.Supp. 306 (S.D.N.Y.1997). Extensive appellate proceedings followed. *See Chem. Bank v. Affiliated FM Ins. Co.,* 169 F.3d 121 (2d Cir.1999), *vacated and superseded on reh'g by, Chem. Bank,* 196 F.3d

373. Part of the judgment was reversed, and the matter was remanded for further proceedings. *See* 196 F.3d at 377. After receiving the formal mandate of this court on August 15, 2000, the judge appears to have reviewed the original (1997) judgment and seen the description of Chemical Bank as "Now the Chase Manhattan Bank." *See* J.A. at 792. This alerted him for the first time to the fact that Chemical Bank had merged with The Chase Manhattan Bank prior to the issuance of his 1997 ruling. The judge immediately divested himself of the Chase stock and, acting under 28 U.S.C. § 455(f),. *see* 2000 WL 1585075, at *2, thereafter conducted the requisite proceedings on remand. We hold that the divestiture after remand could not cure the past appearance of a disqualifying financial interest at the time of trial, *see* 28 U.S.C. § 455(a), and therefore reverse.

While the name Chemical Bank was generally used by counsel to refer to that party (one of five plaintiffs but the lead one), its new status and name were no secret. The merger was highly publicized, papers filed by the parties mentioned it, the judge met with a senior Chase official in settlement discussions, the Chase official sent correspondence to the judge on the Chase letterhead, and trial witnesses who were then employees of Chase explained the merger. Most significantly, the opinion of the judge containing his findings of fact referred to Chase as a party, *see* 970 F.Supp. at 309 n. 2 (as did our opinion on appeal, *see* 169 F.3d at 123 n. 1).

On this record and for reasons stated at length below, we hold that the judge was disqualified under 28 U.S.C. § 455(a), at the latest, when he prepared the findings of fact and that a divestiture after the remand cannot cure the prior disqualification.

### BACKGROUND

In 1987, Andina and the Banks sued Affiliated, as well as certain London insurers and their brokers, in the Southern District of New York, claiming that the defendants' marine open cargo policies covered certain losses that had been suffered by Andina. Affiliated denied coverage, claiming among other things that the coverage had been terminated by two cancellation agreements signed by Andina's broker in 1985 and 1986. During the ten-year pretrial phase of this case, the parties conducted discovery and engaged in the usual motions practice that attends litigation of this sort. Four different judges presided over the case and rendered various decisions.

In August 1995, Chemical Bank announced a planned merger with Chase; the merger became effective in April 1996, at which time the new entity issued a new class of stock called "Chase Manhattan Corporation New Stock." Sometime thereafter in 1996, the district judge, his wife, and a testamentary trust of which his wife was a trustee and income beneficiary purchased between $250,000 and $300,000 of shares of the Chase New Stock.

On April 14, 1997, after discovery was concluded and with various motions pending, the case was reassigned to Judge Pollack for purposes of the bench trial. Notably, the caption and Chemical's corporate disclosure form had not been altered to reflect Chase's presence as a party. The bench trial began on May 12, 1997, less than two weeks after the judge filed the statutorily required financial disclosure forms indicating the purchase of the Chase New Stock in 1996. The trial lasted three and a half weeks, involving a large number of witnesses and hundreds of exhibits. On July 18, 1997, the district judge issued findings of fact and conclusions of law rejecting the various defenses advanced by Affiliated and awarding approximately $92 million to plaintiffs. The largest share—approximately $29 million—was awarded to the lead plaintiff, Chase/Chemical.

Affiliated appealed. Based on a determination that the district court had improperly calculated the period of effectiveness of the Banks' coverage under the insurance policies in question, we vacated the judgment in part and remanded for a recalculation of damages. *See Chem. Bank*, 196 F.3d at 376–77.

On August 18, 2000, three days after receipt of the mandate from our decision remanding the case, and the day after the denial of Affiliated's application for a stay pending the filing of its certiorari petition, the district judge requested that Chase/Chemical's counsel provide updated information regarding the corporate connections and history "pertaining to Chase Manhattan Corporation (New) stock." J.A. at 811. During a conference with the parties on August 23, 2000, the district judge disclosed his ownership of the Chase stock, which had continued (and was properly disclosed as required) since its purchase. He asserted that, during the previous week, he had "learned for the first time that some of the cases consolidated for trial have, in the past few years, undergone corporate changes including mergers and name changes." *Id.* at 309. He stated that "[l]ast week I accidentally became aware for the first time that Chemical Bank had absorbed or merged with The Chase Manhattan Bank, N.A., and that later Chemical changed its name to The Chase Manhattan Bank." *Id.* at 310. Accordingly, he announced that he, his wife, and the family trust had promptly divested themselves of the Chase New Stock.

Affiliated moved under Fed.R.Civ.P. 59 and 60(b)(6) for disqualification of the district judge—including for purposes of the balance of the motion itself—under 28

U.S.C. §§ 455(a) and 455(b)(4), vacatur of all decisions and orders, including the July 1997 judgment, previously entered by the district judge, and a new trial on all claims before another judge.

The motion was supported by an evidentiary submission regarding whether the judge knew or should have known of his disqualification when the case was transferred and thereafter. This submission included a substantial number of stories in the media indicating the great publicity that had surrounded the merger, as reflected in articles and discussion in The New York Times, The Wall Street Journal, Fortune, Time, Newsweek, U.S. News & World Report, Money, and Barron's.

Also included was a catalog of instances in which Chase's role as a party in interest was mentioned and might have caught the judge's attention. In April 1997, at the outset of the judge's involvement in this case, motions papers included at least three documents describing plaintiff Chemical Bank as "now known as The Chase Manhattan Bank" or "now the

Chase Manhattan Bank." Soon thereafter, in a settlement effort, the district judge met privately with senior executives of the parties, including Jeffrey A. Sell of Chase. In connection therewith, the judge received a letter dated May 1, 1997 from Mr. Sell, written on Chase's letterhead, stating that Mr. Sell was writing expressly "on behalf of The Chase Manhattan Bank (Chemical Bank)." Shortly before trial, the plaintiffs submitted proposed pretrial findings of fact, identifying the lead plaintiff as "Chemical Bank (now known as The Chase Manhattan Bank)." At about the same time, the judge filed his financial disclosure form for the prior year reflecting the 1996 purchase of the Chase New Stock.

The trial began on May 12, 1997. Two Chase employees, who had been with Chemical before the merger, testified as witnesses at the bench trial. Each described the Chemical–Chase merger and their own prior employment at Chemical Bank.[1] On June 9, 1997, the final day of

---

1. On the fifth day of trial, May 19, 1997, Chase/Chemical's counsel called and examined William H. Blanc. The testimony began as follows:

Q: Mr. Blanc, by whom are you presently employed?
A. Chase Manhattan Bank.
Q. How long have you been employed by the Chase Bank?
A. Since the merger with Chemical Bank.
Q. Prior to the merger with Chemical, by whom were you employed?
A. Chemical Bank.
Q. How long have you been employed by Chemical Bank?
A. Since December 3, 1962.
Q. Do you have a current title with the bank?
A. I do.
Q. What is that title?
A. Senior vice president.
Q. What are your duties as a senior vice president of the bank?
A. I am responsible for the North American trade operations for Chase Manhattan.

J.A. at 229, Tr. at 557:3–20. In the course of this testimony, Chase/Chemical's counsel advised Blanc and the judge that he would "use the name Chemical for Chase." J.A. at 229, Tr. at 558:10.

The next day, May 20, 1997, Chase/Chemical's counsel called and examined William T. Strout. This testimony began as follows:
Q. Mr. Strout, before we begin, would you please tell the court what you are here to testify about?
A. Chemical Bank's losses, the shared recoveries of all the banks, and the application of those recoveries.
Q. By whom are you presently employed?
A. The Chase Manhattan Bank.
Q. How long have you been employed by the Chase Manhattan Bank?
A. 27 years.
Q. You were employed by Chemical Bank prior to its merger with Chase?
A. Yes.
Q. So that you have been employed by Chemical Bank and by its successor Chase for the past 27 years?

trial, plaintiffs submitted proposed findings of fact and conclusions of law in which they identified the lead plaintiff as "Chemical Bank (now known as The Chase Manhattan Bank)."

Most significantly, the district judge's findings of fact and conclusions of law identified the lead plaintiff as "Chemical Bank (now known as The Chase Manhattan Bank)." *Chem. Bank*, 970 F.Supp. at 309 n. 2. The judgment, entered on July 23, and the supersedeas bond issued for the appeal and approved by the district judge on August 21, 1997, both contained the same identification of the lead plaintiff as "Chemical Bank (now The Chase Manhattan Bank)." J.A. at 145, 151.

The district judge rejected Affiliated's request to transfer the disqualification motion to a different judge, denied the motion from the bench, and proceeded to rule on the remanded damages issues. The district judge stated that his ignorance of Chase's role as a party was a result of the fact that the original Rule 9 form filed by Chemical's counsel in January 1987 identified the lead plaintiff as "Chemical Bank" and was never amended by Chase/Chemical, that the caption of the consolidated case always referred to "Chemical Bank," as did the order assigning the case to him in 1997, and that a finding submitted to him after trial proposed that "Chemical Bank" would act as paymaster for all plaintiffs. *See Chem. Bank*, 2000 WL 1585078, at *1.

The district judge acknowledged that he was always aware of his Chase New Stock purchases and that, referring to the publicity surrounding the merger, he "must have seen some of the newspaper hearsay which the defendant has found in the 1996 press

about the Chemical/Chase acquisition." J.A. at 791. Nevertheless, the fact that Chase and Chemical were now the same entity "did not come to my mind in respect to this case when I took the reassignment in 1997." *Id.* He stated that not until he received the August 15, 2000 mandate had he "focused for the first time on the meaning of the phrase in the form of the original judgment prepared by the Clerk ('Now the Chase Manhattan Bank')." *Id.* at 792. The district judge also acknowledged the existence of record references to Chemical Bank as "now The Chase Manhattan Bank" but stated that these did "not detail the history of and transactions involved in the merger." *Chem. Bank*, 2000 WL 1585078, at *1. However, he announced that he had decided to divest the stock after seeing the phrase in the original judgment identifying "Chemical" as "Chase," even though he "was unable to find out authoritatively in a short time what the corporate transactions were that had taken place," J.A. at 793, 806, and was "still mystified as to what these banks were doing with each other back there in 1996, in the mad rush by banks generally to merge and affiliate," *id.* at 794–95.

That same day, the district judge entered the modified consolidated judgment on remand.

## DISCUSSION

### a) *Standard of Review*

 We review a district judge's denial of a motion to recuse for abuse of discretion. *In re Certain Underwriter*, 294 F.3d 297, 302 (2d Cir.2002). Errors of law or fact constitute an abuse of discretion. *See id.* (citing *Beal v. Stern*, 184 F.3d 117, 122

A. Yes.

Q. For the purposes of your examination I am going to refer to the bank as Chemical Bank, is that all right with you?

A. Yes.

J.A. at 231, Tr. 757:17–25, 758:1–10.

(2d Cir.1999)); *see also Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001) ("A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.") (footnotes omitted).

### b) *Statutory Disqualification*

 We briefly review the relevant statutory provisions. Title 28 U.S.C. § 455(a) provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

This provision governs circumstances that constitute an appearance of partiality, even though actual partiality has not been shown. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). The determination of whether such an appearance has been created is an objective one based on what a reasonable person knowing all the facts would conclude. *See id.* at 860–61, 108 S.Ct. 2194; *see also Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (noting that Section 455(a) requires an "objective" evaluation of a potentially disqualifying interest, and that "what matters is not the reality of bias or prejudice but its appearance").

Section 455(b) provides in relevant part that a judge

> shall also disqualify himself in the following circumstances:
>
> . . . . .

> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455(b).

Section 455(c) imposes a duty upon a federal judge to

> inform himself about his personal and fiduciary financial interests, and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household.

28 U.S.C. § 455(c). For these purposes, Section 455(d)(4) defines "financial interest" to mean "ownership of a legal or equitable interest, however small." 28 U.S.C. § 455(d)(4).

Unlike Section 455(a), therefore, Section 455(b)(4) embodies an actual knowledge test regarding disqualifying circumstances and provides a bright line as to disqualification based on a known financial interest in a party—i.e., an equity financial interest of any size is disqualifying. *See Liljeberg*, 486 U.S. at 859–60 n. 8, 108 S.Ct. 2194. Moreover, the parties may, if fully informed, waive grounds for disqualification under Section 455(a) but not under Section 455(b). *See* 28 U.S.C. § 455(e).

In some circumstances, however, a judge may avoid disqualification if he discloses and divests his financial interest. *See* 28 U.S.C. § 455(f); *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 561 (2d Cir.1991). Section 455(f) provides as follows:

> Notwithstanding the preceding provisions of this section, if any . . . judge . . . to whom a matter has been assigned would be disqualified, after substantial

judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he ... or his ... spouse ... has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the ... judge [or] spouse ... divests himself or herself of the interest that provides the grounds for the disqualification.

28 U.S.C. § 455(f).

### c) *Application*

■ We hold that, under Section 455(a), the district judge was required to disqualify himself, at the very latest, before his decision on the merits in July 1997. In relying on Section 455(a), we emphasize that there is no possibility here that the judge ruled for the banks in order to enrich himself. The asset size of Chase Manhattan Bank is such that its portion of the sizeable judgment originally entered by the judge would not cause any discernible increase in the value of the shares he owned. Moreover, the shares of Chase New Stock held by him were not even 1% of the particular judge's personal fortune. The disqualifying appearance here is of a different character.

We hold that an appearance of partiality requiring disqualification under Section 455(a) results when the circumstances are such that: (i) a reasonable person, knowing all the facts, would conclude that the judge had a disqualifying interest in a party under Section 455(b)(4), and (ii) such a person would also conclude that the judge knew of that interest and yet heard the case. In short, we hold that Section 455(a) applies when a reasonable person would conclude that a judge was violating Section 455(b)(4).

Section 455(b)(4) requires disqualification when a judge knows of his or her financial interest in a party. However, actual knowledge of the interest need not be present if the circumstances are such that the objective test of Section 455(a) is triggered by a financial interest. *See In re Certain Underwriter*, 294 F.3d at 306 ("Even where the facts do not suffice for recusal under § 455(b) ... those same facts may be examined as part of an inquiry into whether recusal is mandated under § 455(a). The two sections focus on different types of conflicts requiring recusal. Section 455(b) focuses on interests and situations which raise conflicts, while 'the goal of section 455(a) is to avoid even the appearance of partiality.'" (alteration omitted) (quoting *Liljeberg*, 486 U.S. at 860, 108 S.Ct. 2194)).

Congress has, as noted, provided that a known financial interest in a party, no matter how small, is a disqualifying conflict of interest and one that cannot even be waived by the parties. This is a bright-line test that is, as to actual partiality, more than a little overbroad. One share of stock in a large corporation cannot induce a corrupt decision. However, a bright-line test as to equity interests in parties, particularly stock, avoids many difficult line-drawing decisions and is in that sense actually helpful to judges. As Congress has observed, in the absence of bright-line rules, judges are forced to decide the extent of their financial interest at their "peril," leaving them open "to a criticism by others who necessarily had the benefit of hind sight ... [and] weaken[ing] public confidence in the judicial system." H.R.Rep. No. 93–1453 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6352. A bright-line rule also avoids mistaken but sensationalist accusations of corruption that are wrong—even dead wrong—but may further shake public confidence in the judiciary. *Id.* We are fully confident of our

observation that the judge had no real financial stake in the outcome. However, we are equally confident that Congress was right in apprehending that a headline (accurately) stating that the judge had entered a $92 million judgment to be shared by a corporation in which he owned $250,000 of stock would damage public confidence in the judiciary.

■ We realize that resort to appearances rather than actualities runs dual risks. The first risk is the potential slippery slope resulting from the fact that appearances are often in the eye of the beholder. However, the appearance rule we adopt is not one that is so unforgiving of all honest mistakes as to cause it to swallow up the knowledge requirement of Section 455(b)(4). District judges in particular carry a large caseload involving parties that may number in the thousands. Judges may often preside over cases involving parties with complex corporate relationships that can be made known to the judge only through express revelation. No suspect appearance is, therefore, created when, in the eyes of a reasonable person, the disqualifying financial interest is not easily ascertainable or otherwise apparent to the judge.

■ Not every appearance of a violation of Section 455(b)(4) creates a disqualifying appearance under Section 455(a). Judges may preside over cases in which they appear disqualified but do so only in a very technical sense. For example, a member of a district judge's family may receive a gift of a small number of shares in a firm that is a party in litigation before the judge. A magistrate judge may make various rulings in the case while that district judge continues to "preside" until some matter is ripe for decision by the judge, at which time the district judge transfers the case. No appearance of partiality can attend a situation in which the judge has

decided nothing. Or a district judge may issue routine, standard scheduling orders in a large number of newly filed cases, missing a disqualifying party in a case with several parties. This may happen in some cases of *pro se* litigation in which a large number of defendants with no particular connection to the claimed harms are named. There is no reasonable appearance of partiality in such circumstances.

■ The second danger of an incautious use of appearance as a disqualifying factor is that a suspicious appearance of partiality can be manufactured by inspiring publicity of repeated claims of bias. A truly disqualifying appearance must thus be determined by a reasonable person standard and not by the ability of the complaining party to voice its concerns through the media. *See In re Aguinda*, 241 F.3d 194, 206 (2d Cir.2001); *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir.1988).

The present circumstances, however, implicate neither risk. First, the judge's presiding role here was anything but technical. He presided over a bench trial and rendered a decision on the merits. Nor was Chase's role as a party obscure; the judge's opinion on the merits noted it. Second, Congress has defined as a nonwaivable disqualifying circumstance any known financial interest in a party no matter how small, subject to the provision of Section 455(f), discussed *infra*. We neither embark on a slippery slope nor invite parties to seek public pressure to disqualify a judge by holding that Section 455(a) applies to circumstances in which a reasonable person would believe, even if incorrectly, that a judge had a disqualifying financial interest in a party to litigation and knew it, i.e. was in violation of Section 455(b)(4).

Those are the circumstances of the present case. It is true that, given the judge's post-trial statement that he did not learn of the Chemical–Chase merger until our mandate had issued, a reasonable person might, albeit not without difficulty, discount: (i) the high profile of the merger and the district judge's concession that he "must have seen" the merger's media coverage, (ii) the references to "Chemical Bank (now known as The Chase Manhattan Bank)" contained in papers submitted to the district judge early in his involvement in the case, (iii) the meeting between the judge and a Chase official and the correspondence from that official on the Chase letterhead, and (iv) the testimony of witnesses at the bench trial before the district judge describing the merger of Chemical and Chase and their resultant employment at Chase. A reasonable person might note that the description "Chemical Bank" was by far the most common reference to the party in question. The record in this case is long, with many motions and trial exhibits, and testimony of witnesses. The factual and legal issues are complex. Most of the references to Chase by the parties, witnesses, or participants in settlement negotiation can be described, not entirely inaccurately, as isolated. These facts alone, although troubling, do not conclusively establish the judge's knowledge of Chase's presence as a party.

Nevertheless, a reasonable person knowing the pertinent facts, the contents of the judge's disclosure form, and the judge's findings of fact, which expressly described the lead plaintiff as "Chemical Bank (now know as The Chase Manhattan Bank)," would conclude that the district judge knew of his disqualifying financial interest in Chase/Chemical at the time of his 1997 decision. We do not question the district judge's later claim that he was unaware of the Chemical–Chase merger. However, by the same token, a reasonable person would view as actual knowledge the judge's recognition of the fact of the merger two years before in his decision on the merits. That recognition, the contents of his disclosure forms, and the other circumstances detailed above, cannot, under Section 455(a)'s objective reasonable person test, be disregarded because of the judge's later profession of ignorance.

In *Liljeberg*, the Supreme Court held that a judge's "forgetfulness" was not deemed "the sort of objectively ascertainable fact that can avoid the appearance of partiality." 486 U.S. at 860, 108 S.Ct. 2194 (quoting *Health Servs. Acquisition Corp. v. Liljeberg*, 796 F.2d 796, 802 (5th Cir. 1986)). We hold that under the present facts the district judge's stated ignorance of the merger cannot overcome the objective appearance of a conflict of interest requiring disqualification under Section 455(a).

■ In this regard, it is important to understand that judges have an obligation to exercise reasonable effort in avoiding cases in which they are disqualified. Section 455 is not a provision that requires judicial action only after a party to the litigation requests it. The relevant provisions are directive and require some reasonable investigation and action on a judge's own initiative. Indeed, a Section 455(b)(4) conflict is non-waivable by the parties' express consent, much less by their silence. There are important reasons for this. One is the damage to public confidence in the federal judiciary's impartiality that would result from constant recusal motions or recurrent controversies over judges' financial interests in parties to litigation. Another reason is that lawyers for the most part expect judges to disqualify themselves under Section 455(b)(4) without a formal motion. In fact, lawyers do not routinely research judges'

financial disclosure forms—the only information available on a particular judge's financial holdings—but even if they did, those forms are generally a minimum of four months out-of-date, i.e., the forms are filed by May 1 and report holdings and transactions for the previous calendar year.[2] Judges therefore bear the principal burden of compliance with that section.

■ We now turn to whether the violation of Section 455(a) was cured under Section 455(f) when the district judge divested his interest in Chase/Chemical immediately upon his discovery of the problem in 2000. In particular, appellees argue that the requirements of Section 455(f) were met in that: (i) the district judge devoted "substantial judicial time" to the matter before "appearance or discovery" of the conflict; (ii) his financial interest cannot be substantially affected by the outcome of the case; and (iii) he divested himself of the interest once he discovered it.

While Section 455(f) allows a judge to divest a newly-discovered disqualifying interest and continue to preside over a case, that divestiture cannot cure circumstances in which recusal was required years before and important decisions have been rendered in the interim. The statutory language, legislative history, and caselaw all support this conclusion.

2. For example, had counsel in this case examined the judge's disclosure forms existing on the date the case was transferred to him, the forms would not have shown the purchase of Chase New Stock.

3. Section 455(f) was the product of a recommendation by the United States Judicial Conference intended to remedy circumstances as described in the House Report. The Conference's proposed legislation cited in *In re Cement & Concrete Antitrust Litigation*, 515 F.Supp. 1076, 1081 (D.Ariz.1981), read:

It is clear from the language of Section 455(f) itself that a curative divestiture must be made upon the "appearance or discovery" of the potentially disqualifying financial interest. The Banks do not dispute this. *See* Br. of Pls.—Appellees Banque Paribas, Rabobank Nederland, and Natwest Bank at 24 (stating that "regardless of how long the possible conflict of interest remained latent," Section 455(f) "is triggered by the 'appearance or discovery' of a disqualifying interest"); Br. of Pls.—Appellees Chem. Bank, Am. Express Bank Ltd., Andina Coffee, Inc. & Andina Trading Corp. at 20 (stating that Section 455(f) "prescribes prompt disclosure and divestiture as the remedy"). It follows that where an earlier "appearance" of a potentially disqualifying interest mandated recusal under Section 455(a), a divestiture years later cannot cure a judge's presiding over significant proceedings in a case—here rendering a decision after a bench trial—in the intervening years.

Even if the statute were deemed ambiguous in this regard—and we do not so deem it—the legislative history of Section 455(f) indicates that the provision was intended to address situations, particularly complex multidistrict class actions, where a judge is "unable to determine whether a cognizable interest exists" in the outcome of the case "until long after litigation has commenced." H.R. Rep. No. 100–889, at 68 (1988) *reprinted in* 1988 U.S.C.C.A.N. 5982, 6029.[3] This is not such a case. As

Notwithstanding the foregoing provisions, if any justice, judge, magistrate, or bankruptcy judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance, after the matter was assigned to him, of a party in which he *individually or as a fiduciary, or* his spouse or minor child residing in his household, has a financial interest (other than an interest that could be substantially affected by the outcome), a waiver of disqualification may be accepted from the par-

stated above, a reasonable person would believe that the district judge knew that he had a financial interest in a party to the litigation at some point before the decision on the merits.

Appellees rely heavily upon our decision in *Kidder, Peabody,* in which we held that Judge Pollack's potentially disqualifying financial interest in a party under Section 455(b)(4) was cured by his prompt divestiture immediately upon discovery. 925 F.2d at 561. In *Kidder, Peabody,* however, we did not find, as we do here, that the appearance of a disqualifying interest was created long before the subsequent discovery and divestiture. *Id.* Because the disqualifying circumstances here appeared in 1997, they cannot be cured by a divestiture in 2000, long after the district judge's conduct of the bench trial, findings of fact, and issuance of judgment. Were we to rule otherwise, Section 455(f) would go far to eliminate the objective appearance test of Section 455(a).

In no case cited by appellees, and in none that we have found, has a judge been able to cure a past Section 455(a) violation by disposing of the interest in question under Section 455(f) long after a decision on the merits. *See, e.g., Kidder, Peabody,* 925 F.2d at 561 (allowing cure under Section 455(f) where the judge disposed of his disqualifying interest "immediately upon learning" thereof, and where no past violation of Section 455(a) was found); *In re Certain Underwriter,* 294 F.3d at 302–04 (allowing Section 455(f) divestiture to cure potential Section 455(b)(4) violation where the judge disposed of disqualifying interest promptly upon discovery, and where there was no prior Section 455(a) violation).

### d) *Remedy*

As for the propriety of the vacatur remedy, we need only quote from the Supreme Court's decision in *Liljeberg,* which for this purpose involved a similar factual scenario:

> These facts create precisely the kind of appearance of impropriety that § 455(a) was intended to prevent. The violation is neither insubstantial nor excusable. Although [the district judge] did not know of his fiduciary interest in the litigation, he certainly should have known .... Moreover, providing relief in cases such as this will not produce injustice in other cases; to the contrary, the Court of Appeals' willingness to enforce § 455 may prevent a substantive injustice in some future case by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered. It is therefore appropriate to vacate the judgment unless it can be said that [appellant] did not make a timely request for relief, or that it would otherwise be unfair to deprive the prevailing party of its judgment.

*Liljeberg,* 486 U.S. at 867–68, 108 S.Ct. 2194.

Of course, it is burdensome to appellees for us to require a new trial. However, it is not unfair. As noted by the district judge, no updated Rule 9 disclosure statement was filed following the Chemical–Chase merger until September 2000. *Chem. Bank,* 2000 WL 1585078, at *1. Chase/Chemical, or for that matter any of the appellees, could have safeguarded against potential disqualification by revis-

---

ties; in the absence of waiver, disqualification is not required if the judge determines that the public interest in avoiding the cost of delay of reassignment outweighs any appearance of impropriety arising from his continuing with the matter to completion.

The Conference's version used "appearance" in the sense of a disqualifying party entering the case. The statute as enacted by Congress may have altered the meaning by changing the language to "appearance ... that [the judge] ... has a financial interest in a party."

ing the Rule 9 disclosure statements at the time of the merger.

## CONCLUSION

For the foregoing reasons, we hold that the district judge's denial of Affiliated's recusal motion was an abuse of discretion. We therefore reverse, vacate all decisions and orders made in this case subsequent to April 14, 1997, and remand with instructions that the case be reassigned for disposition of all motions outstanding as of April 14, 1997 and a new trial. Finally, we amend the caption to reflect Chase's role as a party.

JACOBS, Circuit Judge, concurring.

I concur entirely in the panel opinion. I write separately and briefly to make an observation that may be obvious.

The standard that properly governs the panel opinion is what a reasonable person would believe, knowing the salient circumstances—not what a reasonable person would think who had the benefit of inside knowledge about the work of courts, of particular judges, and of judges in general. A reasonable person would not know that it is possible (and efficient) for a judge conducting a bench trial to pay little attention to the pedigree testimony in which witnesses give their employment history, and to adopt verbatim without close attention the undisputed findings concerning a party's merger history where that history has no bearing on the complex merits of the case. Similarly, a reasonable person knowing the facts and circumstances would nevertheless not know that the reputation of a particular judge would preclude a knowing conflict, that a judge's personal financial resources may render a sizeable investment insignificant, or that many judges avoid reading newspaper accounts of mergers, transactions and other matters that may come before them.

No findings are made or considered as to these circumstances in the panel opinion or in this concurrence, because analytically they do not matter. I mention them only to emphasize that the panel opinion cannot be fairly read to cast the slightest aspersion on an estimable senior judge.