Lola B. THORPE, individually and on behalf of all others similarly situated, Plaintiff,

v.

ZIMMER, INC., Zimmer Holdings, Inc., and Zimmer US, Inc., Defendants.

No. 08 Civ. 3888(CM)(FM).

United States District Court, S.D. New York.

Dec. 2, 2008.

Andres F. Alonso, David B. Krangle, Jerrold S. Parker, Parker Waichman & Alonso, LLP, Great Neck, NY, Ara Ray Jabagchourian, Cotchett, Pitre & McCarthy, Joseph W. Cotchett, Cotchett, Pitre & Simon, Burlingame, CA, for Plaintiff.

Theodore Grossman, Jones Day, Cleveland, OH, Todd R. Geremia, Jones Day, New York, NY, for Defendants.

## DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR DISQUALIFICATION

McMAHON, District Judge:

On April 24, 2008, plaintiff Lola B. Thorpe commenced this action on behalf of herself, and as a class action on behalf of all New York residents who had hip or knee implant surgery that involved the use of Zimmer products and paid all or a portion of their surgery costs, (Compl. ¶ 33.) Plaintiff alleges that defendants Zimmer, Inc., Zimmer Holdings, Inc., and Zimmer US, Inc. (collectively "Zimmer"), "the world's top seller[s] of both knee and hip implant devices," engaged in an illegal kickback scheme whereby they entered into "phony consulting agreements" with orthopedic surgeons, in order to disguise kickbacks given to the surgeons for using Zimmer hip and knee implants in their surgeries, instead of implants made by Zimmer's competitors. (*Id.* ¶¶ 1–2.)

Plaintiff further alleges that this kickback scheme "artificially" boosted the demand for Zimmer hip and knee products and inflated their prices, resulting in financial harm to those patients who paid out of pocket for all or a portion of their surgery costs. (*Id.* ¶ 3.)

Plaintiff claims that Zimmer's "improper and deceptive" kickback practices were directed at the consumer public, in violation of the New York deceptive practices statute, N.Y. Gen. Bus. Law § 349. (*Id.* ¶¶ 47–49.) Plaintiff seeks the greater of actual damages or fifty dollars, on behalf of herself and the members of the proposed class, pursuant to N.Y. Gen. Bus. Law § 349(h). (*Id.* ¶ 49.) Plaintiff further claims that defendants were unjustly enriched by their participation in the improper kickback scheme, because they received financial benefits in the form of artificially inflated demand and prices for their implant products. (*Id.* ¶ 51.)

During the initial pretrial conference on October 3, 2008, I advised the parties that I have had knee implant operations on two occasions. (*See* Geremia Decl. ¶¶ 2–3.) I also informed the parties that my prostheses were manufactured by DePuy Orthopaedics ("DePuy"), one of Zimmer's competitors. (*See id.* ¶ 3.)

Zimmer now asks the Court to recuse itself from this action under 28 U.S.C. § 455(b)(1), arguing that I have "personal knowledge of disputed evidentiary facts" involving this lawsuit because of my two artificial DePuy knees, and under 28 U.S.C. §§ 455(a) and 144 as well. In support of their motion, Zimmer submitted the Declaration of their counsel, Todd Geremia, which (incorrectly) states that, during the Initial Pretrial Conference, "Judge McMahon further disclosed that, before she underwent the procedure to have an artificial knee implanted in her,

she conducted her own research concerning knee implants."[1] (Geremia Decl. ¶ 7.)

At the outset, I note that since my knees were manufactured by DePuy and not Zimmer, I am not a putative member of the plaintiff class, and I have absolutely no financial interest in this lawsuit. I have also represented to counsel that I have no desire to be a member of any class of persons who received knee prostheses, and that I would opt out of any such class should one exist.

## I. Discussion

A judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is required where the judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1).

The Second Circuit has interpreted 28 U.S.C. § 455 to require recusal if "an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal," *United States v. Yousef*, 327 F.3d 56, 169 (2d Cir.2003) (internal quotations omitted), or alternatively, if "a reasonable person, knowing all the facts, [would] conclude that the trial judge's impartiality could reasonably be questioned," *Omega Eng'g. Inc. v. Omega, S.A.*, 432 F.3d 437, 447 (2d Cir.2005) (internal quotations omitted). The judge who is being asked to disqualify herself must apply these objective standards, and her decision not to disqualify herself is reviewed by the Second Circuit for abuse of discretion. *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir.2007).

The Court has an affirmative duty not to disqualify itself unnecessarily. *See Rosen v. Sugarman*, 357 F.2d 794, 797 (2d Cir.1966). Therefore, "the grounds asserted in a recusal motion must be scrutinized with care." *Aguinda v. Texaco, Inc.* (*In re Aguinda*), 241 F.3d 194, 201 (2d Cir.2001). "[W]here the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited." *Id.*

Zimmer has failed to show that my two knee replacement surgeries have any relationship to the evidentiary facts at issue in this case, and I fail to see how an objective person could reasonably question my impartiality simply because I have two prosthetic knees. Therefore, Zimmer's motion for disqualification is denied. Although Zimmer may be unhappy with the expeditious litigation schedule I set,[2] they are only "entitled to an unbiased judge; not to a judge of their choosing." *SEC v. Drexel Burnham Lambert Inc.* (*In re Drexel Burnham Lambert Inc.*), 861 F.2d 1307, 1312 (2d Cir.1988).

## A. Facts Underlying My Knee Replacement Surgeries

The test for recusal is whether an objective observer who is fully informed about the underlying facts would significantly doubt that justice could be done absent my recusal. *Yousef*, 327 F.3d at 169. Therefore, I am required to advise the parties of all the relevant facts concerning my two total knee replacements.

I began to experience serious problems related to degenerative osteoarthritis with my right knee in 1996. By 2005 I required total knee replacement. The physician

---

1. The conference was held in the robing room and was not transcribed.

2. The Court notes that Zimmer's attorney did not express any reservation about having me preside over this case until I set a discovery schedule that was not as leisurely as defendants had planned on.

who replaced my knee decided that he would use a DePuy "rotating platform" prosthesis. I had no knowledge about knee prostheses and no input into the selection of a prosthesis. Furthermore, I have no idea what factors my doctor considered, other than my desire to continue living a non-sedentary lifestyle, which we discussed repeatedly. Contrary to counsel's speculation, I did not do any independent research into various prostheses, or reach any conclusions about the relative merits of one manufacturer's product over another's. I did look at the DePuy website, but only after my surgeon told me what product he was going to use.

In March 2007, my left knee had deteriorated to the point where I had to replace it as well. The operation took place in May 2007. Because my first replacement had been so problem-free, my surgeon suggested, and I agreed, that we should use the same product, although I was told that we would be using an improved version. I had no interest in alternatives, because DePuy's products had worked well for me.

The first time I heard about the kickback scheme and allegations of price inflation that are at issue in this case was when the complaint in this action was filed. If I read anything about Zimmer's plea in *The New York Times* (which I read daily), I did not retain any knowledge about it. I do recall reading an article in some publication about Zimmer's efforts to market knees specifically designed for women.

**B. Recusal Is Not Required Under 28 U.S.C. § 455(b)(1) Because the Court Does Not Have "Personal Knowledge of Disputed Evidentiary Facts"**

 Zimmer argues that I should recuse myself under 28 U.S.C. § 455(b)(1) because I have "personal knowledge of disputed evidentiary facts concerning this proceeding." According to Zimmer, I acquired this extrajudicial knowledge through the "independent research" I allegedly conducted in connection with my two artificial knee replacement surgeries. (Def. Mem. at 1.)

During the pretrial conference, plaintiff's counsel explained that the theory of plaintiff's case is that knee and hip implants manufactured by Zimmer and the other major manufacturers are "fungible;" therefore, Zimmer entered into "kickback" agreements with orthopedic surgeons because they could not compete with the other manufacturers on the basis of quality. (Geremia Decl. ¶ 5.) In response, Zimmer's counsel stated that Zimmer's position is that the various prostheses are not fungible and that, in fact, Zimmer's devices are superior to the devices of their competitors. (*Id.* ¶ 6.) Zimmer argues that whether the various prostheses on the market are fungible is a "critical issue in this case," and that by allegedly conducting independent research and subsequently choosing DePuy implants, I made an "extrajudicial determination ... that DePuy knees are *superior* to Zimmer knees." (Def. Mem. at 2.)

Obviously, Zimmer's hypothesis that I concluded that another manufacturer's prosthesis was superior to defendants' on the basis of independent research is simply wrong. In fact, I have never concluded, and have no basis to conclude, that DePuy prostheses are superior to Zimmer prostheses, or vice versa. I never even considered the relative merits of various manufacturers' prostheses until the pretrial conference, when I asked plaintiff's counsel whether the various hip and knee implants on the market are in fact fungible as plaintiff claims they are. (*See* Geremia Decl. ¶ 6.) Zimmer's speculation that I must have developed such an opinion is erroneous and does not warrant recusal.

*See Lamborn v. Dittmer*, 726 F.Supp. 510, 514 (S.D.N.Y.1989) ("A judge should not recuse [herself] on unsupported, irrational, or highly tenuous speculation . . . .") (internal quotations omitted); *see also In re Aguinda*, 241 F.3d at 201 ("Where a case . . . involves remote, contingent, indirect or speculative interests, disqualification is not required.") (internal quotations omitted).

Zimmer also argues that I acquired "extrajudicial knowledge of an interaction that is at the core of this action: a patient's interaction with her physician in determining which device to implant in her body." (Def. Mem. at 8.) According to Zimmer, this determination is not solely governed by the physician, but is often made by the patient "in close consultation with his or her doctor." (*Id.* at 4.) Therefore, Zimmer plans to argue at the class certification stage that the putative class is not sufficiently cohesive because, *inter alia*, there are material differences among the class members regarding the extent to which they interacted with their physicians in choosing a manufacturer's implant device. (*Id.* at 3.)

I of course have personal knowledge of how DePuy knees ended up in my legs—and now so do the parties. But that does not mean 1 have knowledge of any disputed evidentiary fact.

First, I do not understand defendants to make the facially absurd argument that no knee or hip replacement patient has ever insisted on becoming involved in the choice of prosthesis. So the variety of physician-patient interactions will not be a "disputed evidentiary fact" in this case. The dispute is whether the variety of patient-physician interactions, alone or in tandem with other factors, renders class (or subclass) certification inappropriate. That may (or may not) depend on how widespread patient reliance on their joint replacement surgeons is, but my own singular experience gives me no insight whatever into that issue.

Furthermore, if knowing that different patients rely in varying degrees on their physicians when choosing courses of treatment—whether for joint replacement or for any other ailment—were a disqualifying taint, then I doubt that the parties could find a judge to preside over this case. Most, if not all, federal judges know that some patients trust their doctors to make decisions for them, while others do considerable independent research before consenting to treatment. We know this because nearly all of us have been ill, or have gone through illness with family members or friends. I saw this phenomenon in action years before I received prosthetic knees. It is simply silly to say that this requires recusal.

The few cases cited by Zimmer in support of their § 455(b)(1) arguments are easily distinguished. In *In re Faulkner*, 856 F.2d 716 (5th Cir.1988), the Fifth Circuit held that a judge was required to recuse himself under §§ 455(a) and 455(b)(1), because the judge had personal conversations with a close relative who was "an important participant in key transactions forming the basis of an indictment" in the case. *Id.* at 721. That relative "communicated to the judge . . . material facts and her opinions and attitude regarding those facts." *Id.* Unlike the judge in *Faulkner*, any knowledge I have about my prosthetic knees has nothing to do with this case—neither I, nor any close relative, was involved in the transactions forming the basis of this lawsuit.

Zimmer also cites *Edgar v. K.L.* (*In re Edgar*), 93 F.3d 256 (7th Cir.1996), a class action lawsuit challenging the Constitutionality of the mental health care system of Illinois. In this class action, the district judge had *ex parte*, off-the-record briefings on the merits of the case with three experts, who were appointed to investigate

the state's institutions and programs. *Id.* at 258–59. The Seventh Circuit held:

> This is "personal" knowledge no less than if the judge had decided to take an undercover tour of a mental institution to see how the patients were treated. Instead of going himself, this judge appointed agents, who made a private report of how they investigated and what they had learned. Mandatory disqualification under § 455(b) (1) follows.

*Id.* at 259. Unlike the judge in *In re Edgar*, my two knee replacement surgeries do not give me any personal knowledge of the merits of this case. I do not have Zimmer knees, and I have never conducted (or appointed agents to conduct) an undercover investigation regarding Zimmer's alleged kickback scheme.

The case most closely analogous to this one is *not* cited by Zimmer. In *In re Certain Underwriter Defendants*, 294 F.3d 297 (2d Cir.2002), the Second Circuit concluded that a district judge did not abuse her discretion in denying defendants' recusal motion under § 455(b)(1), where the judge had an even closer connection to the action before her than the connection relied upon here by Zimmer. *In re Certain Underwriter Defendants* involved Securities Actions brought by plaintiffs who invested in the IPO market, who alleged that defendant issuers, underwriters, and brokers manipulated the IPO market. *Id.,* at 297–99. The case was before Judge Scheindlin, and after a conflicts check, Judge Scheindlin revealed that she had invested in several IPOs at issue. *Id.,* at 300–01. However, at a pretrial conference, Judge Scheindlin stated:

> All I know is the broker called and said this is a good stock [to] buy and I said sure, then the next day she called and said this is a good stock [to] sell and I said sure. That's it.... I don't read anything I should read. And that's the end of it. So I know nothing.

*Id.,* at 301. During the conference, Judge Scheindlin also waived any interests she may have held as a putative class member in the Securities Actions. *Id.,* at 301.

Several defendants moved to disqualify Judge Scheindlin under § 455(b)(1), arguing that her participation in the IPOs gave her "personal knowledge of disputed evidentiary facts." *Id.,* at 302. The Second Circuit found that Judge Scheindlin did not abuse her discretion in declining to recuse herself, because defendants failed to show how the judge's experiences investing in IPOs gave her knowledge of "disputed evidentiary facts." *Id.,* at 302–03. In the present case, it is even clearer that Zimmer failed to show that I have knowledge of "disputed evidentiary facts." My prosthetic knees, unlike Judge Scheindlin's investments, are not at issue in this case. The issue is whether there was a kickback scheme (which seems to be conceded, since defendants have agreed to pay substantial fines to avoid prosecution on the criminal complaint so charging them), and whether that scheme inflated the price of Zimmer knees over and above what patients would have paid absent the scheme. Not only could I not be a member of the putative class, but I have waived any right I might have to be a member of a similar action against DePuy should one exist.

Since Zimmer failed to show how my experiences having knee implant surgeries give me "personal knowledge" of "disputed evidentiary facts concerning this proceeding," there is no basis for me to disqualify myself under 28 U.S.C. § 455(b)(1).

**C. Recusal Is Not Required Under 28 U.S.C. §§ 455(a) or 144 Because an Objective, Informed Observer Would Not Reasonably Question the Court's Impartiality**

█ In the alternative, Zimmer argues that, even if I lack personal knowledge of

disputed evidentiary facts, there is a reasonable basis for doubting my impartiality, and I must therefore disqualify myself under 28 U.S.C. §§ 455(a) and 144.

Section 455(a) provides that a judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 144 provides:

Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists.... It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

■■■ Notwithstanding the wording of Section 144, the "mere filing of an affidavit of prejudice does not require a judge to recuse [herself]." *Nat'l Auto Brokers Corp. v. Gen. Motors Corp.*, 572 F.2d 953, 958 (2d Cir.1978). Although the judge must accept the facts asserted in the affidavit as true, *Hodgson v. Liquor Salesmen's Union Local No. 2 of N.Y.*, 444 F.2d 1344, 1348 (2d Cir.1971) (*citing Berger v. United States*, 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921)), the "judge has an affirmative duty to inquire into the legal sufficiency of such an affidavit and not to disqualify [herself] unnecessarily," *LoCascio*, 473 F.3d at 498 (internal quotations omitted). To be legally sufficient under § 144, the affidavit "must give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." *Id.* (internal quotations omitted).

■■■ Section 144 must be read *in pari materia* with Section 455(a). Thus, recusal under Sections 144 and 455(a) "is not limited to cases of actual bias;" the test is whether "an objective, informed observer could reasonably questions the judge's impartiality, regardless of whether [s]he is actually partial or biased." *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir.2000).

The declaration submitted in support of Zimmer's Section 144 motion is legally insufficient. Zimmer's declaration fails to even allege that I "have a personal bias either against" Zimmer or plaintiff. 28 U.S.C. § 144. The facts alleged in Zimmer's declaration are that I have had two separate knee replacement surgeries, my prosthetic knees were manufactured by DePuy, and I conducted independent research concerning knee implants before my surgeries. (Geremia Decl. ¶¶ 3, 7.) Even if I accept these asserted facts as true (and the last assertion is not true), they do not support Zimmer's claim that I am biased, or that I might reasonably appear to be biased to an objective, informed observer. In fact, nowhere does Zimmer explain which party these facts cause me (or appear to cause me) to be biased against. Therefore, there is no reason to recuse myself under §§ 455(a) or 144.[3]

Zimmer's argument that my knee replacement surgeries mandate my recusal under §§ 455(a) and 144 mirrors arguments that have been rejected by several courts in this Circuit. In *Cooper v. United States*, No. 88 Civ. 6106(RPP), 1989 WL 71213, 1989 U.S. Dist. LEXIS 6924 (S.D.N.Y. June 23, 1989), plaintiff, a veter-

---

**3.** I am guessing that Zimmer thinks I am biased against defendants because I received knees from another manufacturer. This idea is so absurd as not to require extended discussion.

an, challenged decisions of the Board of Veterans Appeals regarding his veteran disability benefits. Plaintiff moved to recuse Judge Patterson, on the basis that Judge Patterson was a World War II veteran who had received disability benefits. *Id.*, at *4–5, 1989 U.S. Dist. LEXIS 6924, at *11. Judge Patterson held that recusal was not required under § 455(a), because a reasonable person would not infer that he had a bias or prejudice against plaintiff simply because he was a fellow veteran who had received disability benefits. *Id.*, at *4–5, 1989 U.S. Dist. LEXIS 6924, at *11. Judge Patterson also denied the recusal motion under § 455(b)(1), because he lacked the required personal knowledge of plaintiff or the facts in the case. *Id.*, at *5, 1989 U.S. Dist. LEXIS 6924, at *12.

In *Hoatson v. N.Y. Archdiocese*, No. 05 Civ. 10467(PAC), 2006 WL 3500633, 2006 U.S. Dist. LEXIS 87877 (S.D.N.Y. Dec. 1, 2006), a Catholic Priest sued the Archdiocese of New York, alleging that he was suspended from his position for publicly exposing sexual abuse by the clergy. Plaintiff moved to dismiss Judge Crotty under §§ 144 and 455(b) (1), on the basis that the judge and his family were members of the Catholic Church. *Id.*, at *1, 4, 2006 U.S. Dist. LEXIS 87877, at *2, 13. Judge Crotty denied plaintiffs motion, holding that if he reused himself based on the fact that he was a Catholic, recusal would be required "for any remote connection" and "parties would be encouraged to forum shop for the judge of their choice." *Id.*, at *2, 9, 2006 U.S. Dist. LEXIS 87877, at *7, 30.

In *In re Certain Underwriter Defendants*, Securities Actions were before Judge Scheindlin, who had invested in several IPOs at issue in the actions. *Id.*, at 297–99. The Second Circuit found that Judge Scheindlin did not abuse her discretion in denying defendants' motion to recuse pursuant to § 455(a). *Id.*, at 306.

The Court held that the facts did not "raise an appearance of partiality," because from the perspective of an "objective, disinterested observer," the facts merely showed a district judge who actively invested in some of the IPOs at issue, relied on a broker's advice in choosing her investments, promptly disclosed conflicts as they were discovered, and waived any interest she may have had as a class member in the Securities Actions. *Id.*

*Cooper, Hoatson,* and *In re Certain Underwriter Defendants* demonstrate that an objective, informed observer would not reasonably question the impartiality of a judge who received veteran disability benefits in a case involving veteran disability benefits, or a judge who was Catholic in a case involving the Catholic Church, or a judge who invested in IPOs in a case involving several of those IPOs. Therefore, an objective, informed observer would not reasonably question my impartiality in a case involving prosthetic knees, simply because I have two prosthetic knees.

An argument analogous to Zimmer's has also been rejected the by the District Court for the District of Columbia. In *United States v. Fiat Motors*, 512 F.Supp. 247 (D.D.C.1981), the government charged defendant with failing to remedy safety defects on several of its motor vehicle models. Defendant moved for the district judge's disqualification under §§ 144 and 455, on the basis that the judge was involved in an automobile accident from which he sustained crippling injuries. *Id.* at 249. Defendant argued that no "human being who has suffered such serious injuries and loss by an automobile," as the judge had, could impartially determine issues regarding the safety of defendant's automobiles. *Id.*

The court found that the biggest flaw in the affidavit submitted by defendant in support of recusal was that it failed "to

point to any fact bearing on this litigation or any extrajudicial attitude" that the judge had toward defendant—the affidavit did not even state that a Fiat automobile was involved in the judge's accident. *Id.* at 250. The affidavit "only set out general facts regarding the judge's background." *Id.* at 251–52. The court held that, "The personal background and experience of a trial judge" is "legally insufficient for disqualification," *Id.* at 252.

Like the defendant in *Fiat*, Zimmer merely points to my personal background as grounds for my recusal. My personal background—the fact that my knees were replaced with prosthetic devices not manufactured by Zimmer—is insufficient support for a claim of partiality, or an appearance of partiality, under 28 U.S.C. §§ 455(a) and 144.

In rejecting defendant's argument that his past automobile accident mandated his recusal in an action regarding the safety of automobiles, the district judge in *Fiat* noted:

> [T]he logical extension and result of Fiat's argument would require my disqualification in a substantial number of other proceedings. If, in fact, my injuries and losses would cause a reasonable person to question my ability to render impartial judgments on questions of automobile safety and defects, would it not also lead a litigant to raise questions about my impartiality in any personal injury litigation involving an automobile? If the defendant's position were accepted, would it be proper for me to preside in any trial involving a serious personal injury claim, whether it stems from a motor vehicle collision, an aircraft disaster, an industrial explosion or any of an endless list of other types of accidents resulting in serious personal injury?

*Id.* at 251. Similar concerns would arise in this case if I were to accept Zimmer's argument for my disqualification. If the fact that I had knee replacement surgery would cause a reasonable person to question my impartiality in this case, would it not also lead a litigant to raise questions about my impartiality in any medical malpractice or product liability action regarding knee implants; or any action involving a prosthetic device; or any of an endless list of other types of actions regarding medical procedures? Zimmer's argument must be rejected because there is no limit to where it could go. Zimmer would have to point to something more directly related to this lawsuit than my history of knee replacements to cause a reasonable observer to doubt my impartiality in this case.

## II. Conclusion

For the foregoing reasons, defendants' disqualification motion pursuant to 28 U.S.C. §§ 455(b)(1), 455(a), and 144 is denied.